[No. 12464-5-II.   Division Two.   February 22, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. EDDIE
WAYNE BELL, *Appellant*.

*Kevin B. McGoffin* and *McGoffin & McGoffin,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Senior Appellate Deputy,* for respondent.

ALEXANDER, J.—Eddie Wayne Bell was found guilty and sentenced in Pierce County Superior Court for the second degree murder of Pete Brudevold, the Mayor of Ruston. Bell appeals the conviction, assigning error to the trial court's exclusion of certain evidence regarding the victim's alleged homosexual tendencies and to its refusal to instruct the jury on the claimed defenses of justifiable and excusable homicide. We affirm.

There were no witnesses to the incident which led to the charge and Bell did not testify at trial. The State relied to a large extent on statements that Bell gave to the police following his arrest. In those statements, Bell revealed that he had gone to Brudevold's residence on January 17, 1988, in order to collect on a loan he claims to have made to Brudevold. Because Bell had been drinking, Brudevold offered to allow Bell to spend the night in a trailer located in Brudevold's backyard. Bell said that he accepted the offer and that the two men then left Brudevold's residence and headed for the trailer. Brudevold carried a flashlight and Bell carried a beer bottle.

According to Bell, as they walked to the trailer, Brudevold grabbed at Bell's crotch and attempted to kiss him. Bell said that he responded by striking Brudevold several times with the beer bottle and the flashlight and by strangling him.

Brudevold died as a result of the incident. A medical examiner testifying at trial attributed Brudevold's death to trauma to the head from a blunt object or manual strangulation.

Bell presented evidence of two experts who said that Bell was "homophobic," a condition they believed would cause

Bell to perceive that a homosexual advance upon him was a threat to his life. Another expert testified that Bell suffered from an intermittent explosive personality, which would cause him to feel threatened by any sexual contact that would question his masculinity. That expert said that Bell did not form the intent necessary to commit murder.

A fourth expert testified for the State and said that although Bell had an antisocial personality disorder and intermittent explosive personality, he was capable of forming the intent necessary to commit murder.

Bell sought to admit the testimony of nine lay witnesses. Some of these persons would have testified that Brudevold had a reputation in the community as a homosexual. Others would have testified that they knew of specific instances in which Brudevold displayed homosexual conduct. One witness was prepared to say that on a previous occasion Brudevold approached him in a manner similar to that alleged by Bell (*i.e.*, grabbing him in the crotch). None of the proffered evidence showed that Bell was aware of Brudevold's reputation or prior conduct or that Brudevold had exhibited violent tendencies. The trial court excluded the offered testimony on grounds that it was evidence of other crimes, wrongs or acts of the victim and was, therefore, not admissible pursuant to ER 404(b). In addition, it concluded that any probative value the evidence had was outweighed by its potential for prejudice.

Bell proposed jury instructions on the defenses of justifiable and excusable homicide. The trial court refused to give these instructions, concluding that there was insufficient evidence to support their submission.

## CHARACTER EVIDENCE

Bell contends that the trial court erred in excluding the evidence of Brudevold's reputation in the community as a homosexual, as well as the evidence of specific instances of conduct. Bell's trial attorney indicated that he offered this evidence for the sole purpose of proving that Brudevold acted in conformity with his character trait. In response to

a question from the court, Bell's counsel indicated that he was not offering the evidence to show that Bell apprehended danger.[1] Bell asserts on appeal that the evidence is relevant because Brudevold was a known homosexual and had displayed homosexual tendencies in the past and that the evidence tends to prove that he probably acted in the way Bell described.

As a general rule, character evidence is not admissible to prove that a person acted in conformity with a character trait on a particular occasion. ER 404(a). In particular, evidence of specific acts of conduct is inadmissible if it is offered to prove the character of the person, and that the person acted in conformity with that character. ER 404(b); ER 405(a). Evidence of specific instances of Brudevold's past homosexual behavior clearly falls under the general rule.

█ Evidence of a person's reputation may, however, be admitted in certain circumstances to show that a victim acted in conformity with his or her character where the defendant claims that he acted in self–defense. ER 404(a)(2); ER 405(a); *State v. Young,* 48 Wn. App. 406, 410, 411, 739 P.2d 1170 (1987). As is the case with all evidence, evidence offered by a defendant in support of a self–defense theory must be relevant. ER 402. To be relevant, evidence must have a tendency to prove or disprove a particular fact, and the fact must be "of consequence to the determination of the action". ER 401. While evidence of Brudevold's reputation as a homosexual may tend to prove that he grabbed at Bell's crotch and attempted to kiss him, these facts are

---

[1] In order for reputation evidence to be admissible on the issue of apprehension of danger, a defendant must show that he was aware of the victim's reputation and past homosexual acts. As Tegland points out:

The victim's reputation on the issue of apprehension must have been known to the defendant, . . . Evidence of acts such as fights, quarrels, and insulting words . . . is admissible on the issue of reasonable apprehension of danger on the part of defendant, provided defendant knew of the acts.

5 K. Tegland, Wash. Prac., *Evidence Law and Practice* § 111, at 380 (3d ed. 1989). As noted above, there was no testimony by any of the witnesses that Bell knew of Brudevold's reputation or prior acts.

not "of consequence to the determination of the action", because the defense of self–defense is only available to a defendant who is responding to a perceived threat of great bodily harm or to the victim's commission of a violent felony. *State v. Griffith,* 91 Wn.2d 572, 576, 589 P.2d 799 (1979). As we observe later in this opinion, that defense was not available to Bell because, when tested against an objective standard, the response to Brudevold's acts was unreasonable. Thus, Brudevold's conduct was not a fact of consequence to the action. Reputation evidence offered to show that the conduct likely occurred was irrelevant, notwithstanding the fact that it was otherwise in compliance with ER 404(a)(2) and ER 405(a).

■ Even if the evidence had some probative value on a fact of consequence, the trial court properly reasoned that its value was outweighed by its prejudicial effect. ER 403. A trial judge has very broad discretion in balancing probative value of evidence against its capacity to prejudice and its decision in that regard will not be overturned absent a showing of an abuse of discretion. *State v. Hughes,* 106 Wn.2d 176, 201, 721 P.2d 902 (1986). Bell has not demonstrated to us that the trial court abused its discretion. The issue in this case was the reasonableness of Bell's response to Brudevold's acts. Brudevold's homosexuality was not at issue. The trial judge, after considering the emotional nature of the evidence, expressed a legitimate concern that the jury would likely misuse this evidence and reach its decision on an improper basis. We cannot disagree with that judgment.

■ Bell argues that the trial court's exclusion of the evidence of Brudevold's homosexual reputation and conduct violated his constitutional right to present his defense. We agree that a defendant has a right to present a defense. However, the evidence must be "'relevant and material to the defense.'" *State v. Pacheco,* 107 Wn.2d 59, 67, 726 P.2d 981 (1986). As noted above, Bell has failed to show that the evidence is either relevant or material.

JURY INSTRUCTIONS

■ Bell's argument that the court erred in refusing Bell's instructions on excusable homicide and justifiable homicide is without merit. A defendant is entitled to present his theory of the case to the jury in the form of appropriate instructions only where the theory is supported by substantial evidence in the record. *State v. Griffith, supra.* If any element of a defense is missing, the defense should not be presented to the jury in the instructions. *Griffith,* 91 Wn.2d at 575.

A. Justifiable Homicide/Self–defense.

A homicide is justifiable when committed in lawful defense of the slayer "when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer . . . and there is imminent danger of such design being accomplished;" or "[i]n the actual resistance of an attempt to commit a felony upon the slayer, in his presence, . . .". RCW 9A.16.050. The slayer may, however, only use such force as is reasonably necessary under the circumstances. *Griffith,* 91 Wn.2d at 576. The trial court concluded that it would not instruct on justifiable homicide because it believed that there was no evidence to support an argument that Bell's belief—that he must use deadly force—was reasonable. Bell argues that the trial court erred in applying an objective test to determine the reasonableness of his belief, rather than a subjective test.

The reasonableness of a person's response must be evaluated "from the defendant's point of view as conditions appeared to [the defendant] at the time of the act." *State v. Allery,* 101 Wn.2d 591, 594, 682 P.2d 312 (1984). If there is evidence of self–defense, the jury must be instructed "to consider the conditions as they appeared to the slayer, taking into consideration all the facts and circumstances known to the slayer at the time and prior to the incident." *Allery,* 101 Wn.2d at 595. Bell argues, from *Allery,* that the trial court should view the defendant's response in light of

his good faith, albeit mistaken, belief that deadly force was necessary. We disagree.

In *State v. Hughes, supra,* our Supreme Court addressed this issue when it considered whether the defendant was entitled to an instruction on the so–called "imperfect" self–defense. In that case, the defendant contended that he acted in self–defense and he sought a jury instruction to the effect that a person does not act with intent to kill where he believes in good faith that he was acting in self–defense, even though that belief may be unreasonable.[2] *Hughes,* 106 Wn.2d at 188. Our Supreme Court agreed with the trial court that the proposed instruction should not have been given and it stated:

> Self–defense in this state includes the "essential element" that the person using the force must *reasonably* believe that he or she is in danger. The doctrine of imperfect self–defense would omit the latter essential element and require only a "good faith" or honest belief on the part of the killer that his or her actions were necessary for his or her safety.

(Footnote omitted. Italics ours.) *Hughes,* 106 Wn.2d at 189. The court went on to say that the use of force may be justified if a defendant believes "that self–defense is necessary and if that belief is reasonable". *Hughes,* 106 Wn.2d at 190. Consistent with *Hughes,* we hold that where a defendant claims that he acted in self–defense, he must produce evidence to show that he had a good faith belief that deadly force was necessary, and that this belief, from an objective standpoint, was reasonable. If he does not produce such evidence, he is not entitled to a self–defense instruction.

Bell's proposed self–defense instruction, arguably, was consistent with *Hughes.* The trial court concluded, however, that there was no evidence that it was reasonable for Bell to believe that he must use deadly force in response to Brudevold's actions. Consequently, it concluded that Bell

---

[2]The defendant's proposed instruction in *Hughes* read as follows:

The use of force is not done with unlawful intent to kill where the person believes in good faith that he or she is acting in self defense even though the person's belief is unreasonable.

*Hughes,* 106 Wn.2d at 188.

was not entitled to the proposed instruction.[3] The trial court was correct.

B. Excusable Homicide.

Homicide is excusable "when committed by accident or misfortune in doing any lawful act by lawful means, without criminal negligence, or without any unlawful intent." RCW 9A.16.030. The trial court refused to give Bell's proposed excusable homicide instruction on the ground that Bell failed to produce any evidence that the homicide was accidental. The trial court concluded that the evidence of blows to the victim's head and strangle marks on his throat, as well as Bell's statements to the police led to but one conclusion: that Brudevold's death resulted from an intentional act. The trial court was correct. There was absolutely no evidence that Brudevold's death resulted from Bell's commission of a lawful act by lawful means or that the act was committed by accident or misfortune. The trial court did not err in refusing to give the instruction on excusable homicide.

We affirm.

WORSWICK, C.J., and PETRICH, J., concur.

Review denied at 116 Wn.2d 1030 (1991).

---

[3]Bell's proposed instruction reads as follows:

"If a person acting as a reasonably prudent person mistakenly believes himself to be in danger of injury or of an offense being committed against him, he has the right to defend himself by the use of lawful force against that apparent injury or offense even if he is not actually in such danger."