966 P.2d 883 (1998)
136 Wash.2d 767
The STATE of Washington, Respondent,
v.
Timothy Todd WALKER, Petitioner.
No. 65912-5.
Supreme Court of Washington, En Banc.
Argued June 16, 1998.
Decided November 12, 1998.
Timothy T. Walker, Airway Heights, Eleanor M. Coute, Longview, for Petitioner.
Jim Stonier, Cowlitz County Prosecutor, Lisa Tabbut, Deputy, Kelso, for Respondent.
DOLLIVER, J.
Timothy Todd Walker (Defendant) was tried and convicted of second degree murder for fatally stabbing a neighbor in a fight. Defendant challenges the trial court's refusal to present to the jury Defendant's requested *884 self-defense instructions. We affirm Defendant's conviction.
Defendant became acquainted with Roger Shepardson around Christmas 1992. Shepardson lived across the street, and two houses down, from Defendant. Defendant and his wife, Mrs. Michelle Walker, socialized with Shepardson on numerous occasions.
On the evening before Mother's Day 1993, Defendant and Mrs. Walker saw Shepardson go into his house accompanied by another woman. This observation upset Mrs. Walker, at which point she admitted to Defendant that she had been having an affair with Shepardson. Defendant was hurt and upset, but he and his wife apparently came to an agreement that she would no longer talk to Shepardson.
The description of the following events is based on Defendant's own account, and conflicting testimony from other witnesses will not be discussed. On the evening of May 18, 1993, Defendant and Mrs. Walker were at their home and numerous friends were over drinking beer. At some point in time, Defendant noticed his wife had disappeared, so he went to go see where she was. He found her outside, across the street, talking to Shepardson.
Defendant went across the street and walked up to Mrs. Walker and Shepardson to see what was going on. Shepardson and Defendant exchanged words. Defendant told Shepardson he knew of the affair and said the affair was over and Shepardson should leave Defendant and his wife alone. Shepardson became verbally abusive, stating he should "kick [Defendant's] ass" and taunting that, if Defendant was a man, Defendant would do something about it. 3 Verbatim Report of Proceedings at 424. Shepardson began pushing Defendant back with his stomach and "head-butting" Defendant. Id. Defendant "felt that [Shepardson] was trying to get me to swing so we would fight, and I wasn't about to swing. I started walking back and going away from [Shepardson], and I kept repeating it was over with and to leave us alone." 3 Verbatim Report of Proceedings at 425.
Defendant then broke off contact, and he and Mrs. Walker returned to their house. Once inside, Defendant asked Mrs. Walker why she was talking to Shepardson, and she replied that she could talk to Shepardson any time she wanted. Defendant became upset and said, "`I want to end it.'" 3 Verbatim Report of Proceedings at 426. By this, he claims he meant he "wanted [Shepardson] to leave us alone. That's all I ever wanted was him to leave us alone." Id.
Defendant grabbed from a kitchen drawer a large hunting knife with a fixed five-inch blade and put it in his back pocket. He went back outside because "I wanted to tell [Shepardson] to stay away from us and leave us alone." Id. He took the knife with him because "I thought he would kill me if I got in a fight with him." 3 Verbatim Report of Proceedings at 426-27. This claimed fear was partially based upon Defendant's being of smaller stature than Shepardson and Defendant's having a permanent back injury which caused him pain and allegedly limited his movements. Defendant was afraid of Shepardson and claims he did not intend to fight. He merely "intended to argue with him to tell him to leave us alone; just stay away from us and leave us alone." 3 Verbatim Report of Proceedings at 427. On cross-examination, he admitted knowing a fight could possibly occur.
When Defendant came out of his house and onto the porch, Shepardson shouted to him from the street, "`Come on. Let's do it.'" Id. In response to this, Defendant left his porch, went through the front gate, and out into the street.
Defendant claims he went forth in response to Shepardson's invitation because he "thought it was going to be a yelling match." 3 Verbatim Report of Proceedings at 428. Instead, when Defendant went out toward the street, Shepardson came to meet him and immediately began swinging his fists. Defendant claims Shepardson continuously punched Defendant, backing him up and pushing him back against a car. Defendant tried to hit back, but could not "get past [Shepardson's] arm." Id. Once Defendant had been pushed back up against a car, he claims he feared Shepardson was going to *885 kill him. Defendant took the knife out of his pocket and tried to hit Shepardson in his shoulder to get him off. Shepardson continued punching Defendant. Defendant claims he struck out about three times with the knife. Finally, Shepardson fell over backward, pulling Defendant down on top of him. Defendant pulled himself away, and Shepardson slid to the ground. The State's medical witness testified Shepardson died from a knife wound to his aorta.
After hearing all of the witnesses and reviewing all the evidence, the trial judge heard argument from counsel regarding what instructions should be given to the jury. The court ruled Defendant could not present any self-defense instructions to the jury. Defendant's claim to self-defense rested solely upon the assertion that, as a result of the beating he was receiving from Shepardson, he began to fear for his life and used the knife. The judge found no evidence supporting Defendant's claimed belief that he was in serious danger of being killed or grievously injured by Shepardson. There was no physical evidence that Defendant "really suffered any kind of injury." 3 Verbatim Report of Proceedings at 478. The judge quoted from State v. Griffith, 91 Wash.2d 572, 589 P.2d 799 (1979) and stated a simple assault or ordinary battery could not justify the taking of a human life.
The jury was instructed on the offenses of first degree murder, second degree murder, and first degree manslaughter. The jury found Defendant guilty of second degree murder. Defendant appealed to the Court of Appeals, and one of the issues raised was the trial court's refusal to instruct the jury on self-defense. The Court of Appeals affirmed the conviction in an unpublished opinion. See State v. Walker, 81 Wash.App. 1035 (1996).
This court granted review and simply remanded the case to the Court of Appeals in light of this court's decision in State v. Walden, 131 Wash.2d 469, 932 P.2d 1237 (1997). On remand, the Court of Appeals adhered to its initial decision. This court again granted review.
The standard for review applied to this appeal depends on whether the trial court's refusal to grant the jury instructions was based upon a matter of law or of fact. A trial court's refusal to give instructions to a jury, if based on a factual dispute, is reviewable only for abuse of discretion. State v. Lucky, 128 Wash.2d 727, 731, 912 P.2d 483 (1996), overruled on other grounds by State v. Berlin, 133 Wash.2d 541, 544, 947 P.2d 700 (1997). The trial court's refusal to give an instruction based upon a ruling of law is reviewed de novo. Id.
A summation of the law on self-defense is necessary. A defendant cannot present a self-defense instruction to the jury without first "producing some evidence which tends to prove that the killing occurred in circumstances amounting to self-defense." State v. Janes, 121 Wash.2d 220, 237, 850 P.2d 495, 22 A.L.R.5th 921 (1993) (citing State v. Acosta, 101 Wash.2d 612, 619, 683 P.2d 1069 (1984); State v. McCullum, 98 Wash.2d 484, 488, 656 P.2d 1064 (1983) (plurality by Williams, J.)). One of the elements of self-defense is the person relying on the self-defense claim must have had a reasonable apprehension of great bodily harm. Janes, 121 Wash.2d at 237, 850 P.2d 495 (citing RCW 9A.16.050).
In determining whether a defendant has produced sufficient evidence to show reasonable apprehension of harm, the trial court must apply a mixed subjective and objective analysis. The subjective aspect of the inquiry requires the trial court to place itself in the defendant's shoes and view the defendant's acts in light of all the facts and circumstances known to the defendant. Janes, 121 Wash.2d at 238, 850 P.2d 495. The objective aspect requires the court to determine what a reasonable person in the defendant's situation would have done. Id. The imminent threat of great bodily harm does not actually have to be present, so long as a reasonable person in the defendant's situation could have believed that such threat was present. See State v. LeFaber, 128 Wash.2d 896, 900-01, 913 P.2d 369 (1996).
The importance of the objective portion of the inquiry cannot be underestimated. Absent the reference point of a reasonably prudent person, a defendant's subjective beliefs *886 would always justify the homicide. Janes, 121 Wash.2d at 239, 850 P.2d 495. "Applying a purely subjective standard in all cases would give free rein to the short-tempered, the pugnacious, and the foolhardy who see threats of harm where the rest of us would not...." Janes, 121 Wash.2d at 240, 850 P.2d 495 (quoting Susan Estrich, Defending Women, 88 Mich. L.Rev. 1430, 1435 (1990)); see also State v. Hill, 76 Wash.2d 557, 566, 458 P.2d 171 (1969) (If defendant were the sole judge as to the existence of the peril of great bodily harm confronting him and the amount of force necessary to protect himself against it, then "there would be no limit to the amount of force which a person could use in defending himself against such alleged peril."). The objective part of the standard "keeps self-defense firmly rooted in the narrow concept of necessity." Janes, 121 Wash.2d at 240, 850 P.2d 495.
With both subjective and objective aspects taken into account, the trial judge must determine whether the defendant produced any evidence to support his claimed good faith belief that deadly force was necessary and that this belief, viewed objectively, was reasonable. State v. Bell, 60 Wash.App. 561, 567, 805 P.2d 815 (1991). If the trial court finds no reasonable person in the defendant's shoes could have perceived a threat of great bodily harm, then the court does not have to instruct the jury on self-defense. Bell, 60 Wash.App. at 567-68, 805 P.2d 815; see also State v. Griffith, 91 Wash.2d 572, 575, 589 P.2d 799 (1979) (If any one of the elements of self-defense is not supported by the evidence, the self-defense theory is not available to a defendant, and the defendant cannot present the theory to a jury); State v. Walker, 40 Wash.App. 658, 665, 700 P.2d 1168 (1985) ("That the defendant is a victim of a battering relationship is not alone sufficient evidence to submit the issue of self-defense to a jury. It is the perceived imminence of danger, based on the appearance of some threatening behavior or communication, which supplies the justification to use deadly force under a claim of self-defense.").
Having summarized the law on self-defense, we turn our analysis to the lower court's decision. This court granted review of the case because of a possible conflict between the Court of Appeals' decision and this court's decision in State v. Walden, 131 Wash.2d 469, 932 P.2d 1237 (1997). In Walden the defendant claims he was pushed off his bicycle by three teenagers with whom the defendant had been involved in an altercation on at least one previous occasion. Walden, 131 Wash.2d at 472, 932 P.2d 1237. After being pushed off the bike, Walden pulled out a knife and either brandished it or actually attempted to use it against the three teens, who were apparently unarmed. Walden was charged with second degree assault, and this court reversed his conviction because of the following jury instruction:
One has the right to use force only to the extent of what appears to be the apparent imminent danger at the time. However, when there is no reasonable ground for the person attacked or apparently under attack to believe that his person is in imminent danger of death or great bodily harm, and it appears to him that only an ordinary battery is all that is intended, he has no right to repel a threatened assault by the use of a deadly weapon in a deadly manner.
Great bodily injury as used in this instruction means injury of a graver and more serious nature than an ordinary battery with a fist or pounding with the hand; it is an injury of such nature as to produce severe pain, suffering and injury.
Walden, 131 Wash.2d at 472, 932 P.2d 1237.
This court found the first paragraph of the instruction adequately conveyed the relevant law on self-defense. Walden, 131 Wash.2d at 475, 932 P.2d 1237. The first paragraph affirms the long stated proposition that a simple assault or an ordinary battery cannot justify the taking of human life. State v. Churchill, 52 Wash. 210, 224, 100 P. 309 (1909); see also State v. Bezemer, 169 Wash. 559, 577, 14 P.2d 460 (1932).
The second paragraph of the instruction in Walden, however, misstated the law because it could potentially confuse jurors into thinking they were not allowed to consider "the defendant's subjective impressions of all the facts and circumstances, i.e., whether the defendant reasonably believed the battery at *887 issue would result in great personal injury." Walden, 131 Wash.2d at 477, 932 P.2d 1237. In other words, while a simple battery cannot justify the taking of a human life (the first paragraph), if the facts of a particular case show a reasonable person in the defendant's shoes could have reasonably believed that great bodily harm would result from the battery, then the use of deadly force may have been reasonable despite the victim's being unarmed. Because the second paragraph potentially confused the jury, this court reversed Walden's assault conviction.
Walden relied in great part upon State v. Painter, 27 Wash.App. 708, 620 P.2d 1001 (1980), where the Court of Appeals also disapproved of a similar instruction defining great bodily injury. In Painter, the defendant shot and killed her stepson, Ted, during an altercation in the home. Ted was unarmed at the time of the altercation. The jury instructions used by the trial court defined great bodily injury as "an injury of a more serious nature than an ordinary striking with the hands or fists. It must be an injury of such nature as to produce severe pain and suffering." Painter, 27 Wash.App. at 711, 620 P.2d 1001. The Court of Appeals held this definition impermissibly prevented the jury from considering the defendant's subjective state of mind during the altercation.
Janice Painter's state of mind was relevant to whether a reasonable person in her situation could have feared imminent danger from Ted's unarmed attack on Painter. Mutual animosity existed between Painter and Ted. In the few months prior to the shooting, their relationship had deteriorated. Painter, 27 Wash.App. at 709, 620 P.2d 1001. Ted made calls to Painter and threatened to rape and/or kill her and her children. Painter was so terrified that she hired an ex-felon as a bodyguard and obtained a gun for protection. Painter, 27 Wash.App. at 709, 620 P.2d 1001. Ted was 30 years old, was a Vietnam veteran, was 5 feet 6 inches tall and was described as "`strong and wiry.'" Painter, 27 Wash. App. at 709, 620 P.2d 1001. Painter, on the other hand, was 46 years old and was beset by numerous physical problems caused by a back injury. She occasionally used a crutch and took medication regularly. Painter, 27 Wash.App. at 709-10, 620 P.2d 1001. She was using a "cuff" crutch on the day of the shooting.
Under the facts in Painter, Painter could have reasonably apprehended great bodily harm and/or death based upon her past dealings with Ted, despite his being unarmed. Painter illustrates that the "simple" use of bare hands by an assailant could, under certain circumstances, reasonably be expected to cause great bodily harm. See also State v. Wanrow, 88 Wash.2d 221, 238, 559 P.2d 548 (1977) (defendant's knowledge of the victim's reputation for aggressive acts should be taken into consideration by jury when determining whether a reasonable person in defendant's situation would have perceived a threat justifying self-defense) (plurality opinion).
Walden and Painter stand for the proposition that one could reasonably fear great bodily harm or death from an unarmed assailant, depending on the circumstances. It is possible this rule of law was not fully applied by the Court of Appeals when it ruled on Walker's self-defense claim. After reviewing the law of self-defense, the appellate court held:
Walker was not entitled to use deadly force. A simple assault, viewed objectively, does not justify one's use of deadly force in defense. In essence, Walker took a knife to a fistfight.
State v. Walker, No. 17650-5-II, slip op. at 5 (Wash.Ct.App. May 10, 1996). In making this ruling, the appellate court makes no reference to what a reasonable person may have perceived in Defendant's situationit merely states a person may not use deadly force to defend against a fistfight. The Court of Appeals' statement regarding the fistfight implies no defendant could ever reasonably fear great bodily harm as a result of a beating with the naked hands. This implication omits the subjective aspect of the inquiry, thereby conflicting with Walden.
While the Court of Appeals' decision may have rested upon an improper rule of law, the trial court's refusal to allow self-defense instructions was based upon a mixed *888 legal and factual finding. These two aspects must be separated for analysis. We must first determine whether the trial court followed the proper rule of law, and we must then determine if the court adequately applied the law to the facts of the case.
There is no dispute as to the proper rule of law applicable to this case. Defendant has the burden of introducing some evidence in support of his claim that he had a reasonable fear of great bodily injury. If "there is no reasonable ground for the person attacked ... to believe that his person is in imminent danger of death or great bodily harm, and it appears to him that only an ordinary battery is all that is intended, he has no right to repel a threatened assault by the use of a deadly weapon in a deadly manner." Walden, 131 Wash.2d at 475, 932 P.2d 1237 (quoting part of a jury instruction with approval).
It is clear from the record that the trial court applied the proper subjective/objective inquiry into Defendant's claimed fear of great bodily harm. If the trial court's decision had rested upon the purely objective principle rejected in Walden, there would have been no reason for the court to delve into the facts supporting Defendant's claimed belief of imminent danger of great bodily injury. Instead, the court would have simply ruled Defendant's use of the knife against the unarmed Shepardson was unjustifiable, with no discussion of Defendant's mixed subjective/objective perspective of the attack. The trial court, however, gave much attention to the circumstances of the fight, and the court clearly examined Defendant's subjective point of view when determining whether a reasonable person could have perceived a threat of great bodily injury from the fistfight with Shepardson.
The court's factual finding that no evidence supported Defendant's claimed belief of imminent danger of great bodily injury is reviewable only for abuse of discretion. Lucky, 128 Wash.2d at 731, 912 P.2d 483. The trial judge heard all of the testimony, observed the demeanor of the witnesses, and reviewed all the evidence. The trial judge had the opportunity to view Defendant in court and see if, and how much, his back injury restricted his physical movements. The trial judge was in the best position to hear and weigh the evidence to determine if any of it supported Defendant's self-defense claim. After reviewing all of the information before the court, the trial judge refused to allow Defendant's proposed jury instructions on self-defense.
The trial court's factual findings are supported by the record. Even though Defendant was of smaller stature than Shepardson, and even though Defendant had a back injury, no facts in the record support Defendant's claimed fear that Shepardson was going to kill him. Shepardson and Defendant had one or two verbal altercations prior to the night of the fight, and during one of those altercations Shepardson threatened to "kick the shit out of" Defendant. 3 Verbatim Report of Proceedings at 416. Defendant, however, never heard Shepardson make any death threats against him in contrast to the facts of Painter. Shepardson was never portrayed as being a violent person or having a history of injuring or killing people. Prior to engaging in the fistfight, Defendant had no reasonable ground to fear that Shepardson would inflict great bodily harm on Defendant.
As mentioned above, Defendant's main self-defense argument rested upon the assertion that he began fearing for his life only as a result of the alleged beating he was receiving from Shepardson. The facts did not support this claimed fear. The trial court observed there was no physical evidence that Defendant suffered any kind of injury, other than a possible, unsubstantiated cut by the side of his mouth. There was no evidence of any swelling or bruising on Defendant which would have indicated a severe physical beating.
In contrast to Defendant's lack of any injuries, a pathologist testified Shepardson's body exhibited five knife wounds, including the fatal blow, to the chest and trunk area. In addition, Shepardson had three stab wounds on his right arm, and two or three stab wounds on his left arm. Shepardson's fists showed no signs of bruising to indicate he had punched anything with sufficient force to cause a bruise to his fists. No evidence supported Defendant's claimed fear *889 for his life as a result of the alleged beating. As the trial court stated, "What we have is a fight going on which is a simple assault or certainly nothing else at that point...." 3 Verbatim Report of Proceedings at 480. Defendant went into the street to argue with Shepardson, and the argument turned into a simple fistfight, even taking into account Defendant's subjective perceptions. Any reasonable person standing in Defendant's shoes would have perceived that only "an ordinary battery is all that [wa]s intended," in which case the use of deadly force was unjustified. Walden, 131 Wash.2d at 475, 932 P.2d 1237 (quoting jury instruction 18).
Walden stands for the proposition that, under certain circumstances, a person may reasonably fear great bodily injury from a severe beating by naked hands. Such circumstances are not present in this case. Defendant failed to offer any evidence supporting his claimed fear that Shepardson intended to commit anything more than an ordinary battery against him; rather, the evidence showed that, even taking into account all Defendant knew at the time, no reasonable person could have feared great bodily harm.
Even though the Court of Appeals' ruling may have relied upon the pure objective statement of law disapproved by Walden, the trial court's decision clearly rested upon the application of the proper legal standard to the specific facts of the case. Defendant has failed to show the trial court abused its discretion. Defendant's deadly use of force was unreasonable, and we affirm the trial court's refusal to give self-defense instructions to the jury.
DURHAM, C.J., and SMITH, GUY and TALMADGE, JJ., concur.
MADSEN, J., dissenting.
I agree with the majority that the Court of Appeals decision rests upon an improper rule of law i.e., that a simple assault, viewed objectively, never justifies use of deadly force in response.[1] I dissent, however, because contrary to the majority's decision, the trial court erroneously deprived the defendant of a jury decision on the issue of self-defense.
The majority approves the trial court's conclusion that no reasonable person in defendant Timothy Walker's shoes could have perceived a threat of great personal injury, and thus affirms that court's refusal to give self-defense instructions. "The question of whether the defendant has produced sufficient evidence to raise a claim of self-defense is a matter of law for the trial court." State v. Janes, 121 Wash.2d 220, 238 n. 7, 850 P.2d 495, 22 A.L.R.5th 921 (1993). It is not improper to refuse a self-defense instruction when there is no evidence to justify a reasonable inference that the defendant acted in self-defense. State v. Currie, 74 Wash.2d 197, 198, 443 P.2d 808 (1968). However, a "[t]rial court is justified in denying a request for a self-defense instruction only where no credible evidence appears in the record to support a defendant's claim of self-defense." State v. McCullum, 98 Wash.2d 484, 488, 656 P.2d 1064 (1983). A self-defense instruction must be given when the defendant produces some evidence of self-defense. Janes, 121 Wash.2d at 237, 850 P.2d 495. The threshold burden is low. Id. The evidence does not need to be sufficient to create a reasonable doubt. McCullum, 98 Wash.2d at 488, 656 P.2d 1064. Once such evidence is produced by defendant, the State's burden is to prove the absence of self defense beyond a reasonable doubt. State v. Walden, 131 Wash.2d 469, 473, 932 P.2d 1237 (1997); Janes, 121 Wash.2d at 237, 850 P.2d 495. Even though evidence of self-defense was offered here, the State was relieved of its burden to disprove self-defense beyond a reasonable doubt. Thus, I would reverse and remand this case for a new trial.
In determining whether there is sufficient evidence to instruct the jury on self-defense, the trial court must view the evidence in the light most favorable to the defendant. State v. Callahan, 87 Wash.App. 925, 933, 943 P.2d 676 (1997). Likewise, an appellate court reviewing the propriety of a trial court's refusal to give instructions on self-defense considers the evidence in the light most favorable to the defendant. State v. Jelle, 21 Wash.App. 872, 873, 587 P.2d 595 (1978). Thus, to uphold the trial court's refusal to give a self-defense instruction, there can be no evidence *890 in the record, viewed in the light most favorable to the defendant, that a reasonable person in Walker's circumstances, knowing what he knew and seeing what he saw, would believe that his or her person was in imminent danger of death or great personal injury. See Walden, 131 Wash.2d at 474-75, 932 P.2d 1237.
This record contains evidence supporting a self-defense instruction. George Shepardson was much larger than Walker. Walker suffered from a back condition making him more susceptible to pain and more vulnerable to a beating because it limited his movements. There was evidence that Shepardson met Walker in the street and immediately began swinging his fists, backed Walker up, and had him pinned over the hood of a car. Defendant testified he tried to hit back, but could not get past Shepardson's arms. He also testified he feared Shepardson was going to kill him. This encounter was preceded shortly in time by an altercation where Shepardson became verbally abusive and then physically confrontational. Given the evidence of disparity in size, defendant's disabled condition, and his having been overcome by Shepardson after a previous physical attack, the evidence meets the threshold standard of "some evidence" of self-defense. It is not the trial court's prerogative to resolve the factual question whether a defendant in fact acted in self-defense. It is the State's burden to disprove the defense once validly raised, and the jury's province to resolve the factual issues.
However, like the trial court, the majority also erroneously assesses the evidence to decide whether or not Walker acted in self-defense. The proper question is not whether Walker acted in self-defense, but whether he produced some evidence of self-defense. Additionally, the majority errs in its factual analysis when it states, among other things, that there was no evidence that Walker sustained any kind of injury (other than a possible slight injury) and this lack of physical evidence supports the conclusion that Walker did not fear for his life. The majority's analysis is inconsistent with the principle that in order to establish self-defense, a finding of actual danger is not necessary. The jury instead must find only that the defendant reasonably believed that he or she was in danger of imminent harm. State v. LeFaber, 128 Wash.2d 896, 899, 913 P.2d 369 (1996). If actual danger is not necessary, neither is actual injury to show reasonable belief.
The trial court also ruled that Walker was a first aggressor who was not entitled to a self-defense instruction. This ruling was in error. In general the right of self-defense cannot be successfully invoked by an aggressor or one who provokes an altercation, unless he or she in good faith first withdraws from the combat at a time and in a manner to let the other person know that he is withdrawing or intends to withdraw from further aggressive action. State v. Craig, 82 Wash.2d 777, 783, 514 P.2d 151 (1973). I cannot agree in this case that Walker was the first aggressor as a matter of law. There is evidence that after retreating into his house Walker argued with his wife, then put a knife in his back pocket and went back outside to try to convince Shepardson to leave his family alone. Walker went into the street when Shepardson said "Come on. Let's do it." 3 Verbatim Report of Proceedings at 427. Shepardson then attacked him.
Although Walker carried a knife back outside, there is evidence that it was concealed in his back pocket; thus, Shepardson's attack was not precipitated by the knife. Although on the one hand it might be argued that when Walker went back outside his return provoked Shepardson, Walker testified that he sought to convince Shepardson to leave his family alone and took a knife with him only because he feared that if Shepardson got into a fight with him, Shepardson would kill him. Viewing the evidence favorably to Walker, the trial court should not have determined as a matter of law that Walker was an aggressor not entitled to a self-defense instruction.
I would reverse Walker's conviction and remand for a new trial with appropriate instructions on self-defense.
JOHNSON, ALEXANDER and SANDERS, JJ., concur.
NOTES
[1] That analysis fails to recognize the subjective component of the self-defense inquiry, as well as the court's recent decision in State v. Walden, 131 Wash.2d 469, 932 P.2d 1237 (1997).