# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, ) | DIVISION ONE |
| Respondent, ) | No. 74167-5-I |
| v. ) | UNPUBLISHED OPINION |
| MISTY CHERIE CROSSLAND, ) | |
| Appellant. ) | FILED: January 19, 2016 |

DWYER, J. — Following a jury trial, Misty Crossland was convicted of assault in the third degree. On appeal, Crossland contends (1) that she was denied her constitutional right to a unanimous verdict,[1] (2) that the trial court erred by denying her request for a voluntary intoxication instruction, and (3) that insufficient evidence supports her conviction. Finding no error, we affirm.

I

On July 24, 2014, at approximately 11:30 p.m., City of Centralia Officers William Phipps and Doug Lowrey responded to a call for assistance in removing a woman from the male caller's apartment. When police arrived, the man informed the officers that he and the woman, Crossland, were on their third date. Crossland had come to the man's house at his request, and had brought her

---

[1] She also contends that her attorney was ineffective for failing to request a unanimity instruction.

seven-year-old son with her, who was sleeping on the couch. After Crossland had consumed four shots of whiskey, the man had asked to have intercourse with her. Crossland had refused and, as a result, the man had asked her to leave. Because she was too drunk to drive home, Crossland had requested to stay the night on the floor while her son slept on the couch. After refusing to permit Crossland to stay, the man had offered to call her a cab. When Crossland refused the cab, the man had called the police.

Phipps instructed Crossland that, because she was no longer welcome at the apartment, she was obliged to leave. The officers intended to remove Crossland from the premises but not to cite her for any crime. Phipps offered to drive Crossland and her son home and Lowrey offered to pick up the sleeping seven-year-old and carry him to the police car. Crossland agreed.

As Lowrey attempted to pick up Crossland's sleeping child, she hovered around him, crowding him in, and "getting in his elbow room." Phipps stepped in, grabbed Crossland by the arm, and pulled her into the living room, allowing Lowrey more space to pick up the child. Meanwhile, Crossland continuously tried to verbally engage with the man from the apartment. Phipps turned Crossland around and directed her down the apartment stairs. She was irate and did not want to leave the apartment.

The officers and Crossland made their way down the apartment stairs, toward the patrol cars across the street. Once they reached the sidewalk area, Crossland continued to yell at both the officers and the man, who was watching

from the upstairs patio. Again, Phipps turned Crossland around, directing her toward his patrol car.

A step or two later, Crossland once again turned around to yell back at the man. Phipps once again grabbed her by the shoulder to keep her moving forward toward the patrol car. At this time, Phipps saw Crossland's right arm come in a wide arc toward his head and shoulder area. Phipps perceived this act to be an intentional attempt to strike him. Although Phipps was able to block the brunt of the blow, he was hit on the top of his shoulder.

The incident was visible to Lowrey, who was then descending the apartment stairs. Lowrey observed Crossland "yank" away from Phipps's grasp and use her right hand and turn to strike the officer. Lowrey concurred that the act appeared to be intentional, as he observed Crossland deliberately twist her body to throw the swing toward Phipps. Crossland's overall demeanor at this time was "[h]ysterical, volatile, just very upset and irrational."

After the assault, Phipps put Crossland in a headlock and brought her down to the ground, where she was handcuffed to prevent further incident. Phipps testified that he would not have taken her to the ground if she had not swung at him, as there would have been no need to do so.

Based on the foregoing events, the State charged Crossland with assault in the third degree – assault on a peace officer.

At trial, Crossland denied that she had ever struck Phipps. She testified that, after leaving the man's apartment, she had asked to drop belongings off at her vehicle before being driven home. Crossland recalled that, when she

returned from her vehicle, she had the impression that she was being treated as if she were a criminal. In response, she "explained to [Phipps] that [she] did not hit [the man in the apartment] and that [she] did, however, poke [him] in the chest." According to Crossland, as she was recounting this to Phipps, she demonstrated the chest poke for him by "touching" Phipps in the chest. That was when Phipps "threw [her] to the ground and put [her] under arrest."

Phipps denied that Crossland had dropped off belongings in her vehicle after exiting the apartment. Both officers denied that Crossland had poked Phipps in the chest.

Crossland was convicted as charged. She now timely appeals.

II

Crossland first contends that her constitutional right to jury unanimity was violated. This is so, she asserts, because evidence was admitted of two separate acts of assault but the State did not make an election and no unanimity instruction was given.[2] We disagree.

Criminal defendants have a right to a unanimous jury verdict. WASH. CONST. art. I, § 21; State v. Ortega–Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). If evidence of multiple acts that could constitute the crime charged is presented, the State "must tell the jury which act to rely on in its deliberations or the court must instruct the jury to agree on a specific criminal act." State v. Kitchen, 110 Wn.2d 403, 409, 756 P.2d 105 (1988); State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). Failure to do so is constitutional error because of

---

[2] Crossland did not request a unanimity instruction at trial. However, this is an issue of constitutional magnitude that may be raised for the first time on appeal. RAP 2.5(a)(3).

"the possibility that some jurors may have relied on one act or incident and some another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction."[3] Kitchen, 110 Wn.2d at 411.

The multiple acts instruction applies only when the State fails to "elect the act upon which it will rely for conviction." Petrich, 101 Wash.2d at 572; see also 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.25, note on use at 110 (3d ed. 2008) (WPIC) ("If there is evidence of multiple distinct occurrences of the crime, but the prosecution elects to rely upon a specific occurrence to support a conviction, then this Petrich instruction should not be used."). Our Supreme Court recently clarified what constitutes a successful election by the State.

> We have never held that the State's election of an act must be ratified by the court or incorporated into the charging document or jury instructions in order to be effective. On the contrary, and as our use of the phrase "*tell* the jury" in Kitchen suggests, [110 Wn.2d at 409] (emphasis added), an election can be made by the prosecuting attorney in a verbal statement to the jury as long as the prosecution "clearly identifie[s] the act upon which" the charge in question is based. State v. Thompson, 169 Wn. App. 436, 474-75, 290 P.3d 996 (2012) ("[b]ecause the State clearly identified the act upon which the sexual motivation allegation was based" in its closing argument, "no unanimity instruction was necessary"); compare, e.g., id., and In re Pers. Restraint of Delgado, 160 Wn. App. 898, 902, 251 P.3d 899 (2011) (prosecutor "'clearly elected . . . the criminal acts associated with the two counts during its closing arguments'"), . . . with State v. Williams, 136 Wn. App. 486, the record evidence could reasonably support a closing argument where prosecutor "emphasized" one act over others but did not

---

[3] As the State emphasizes in its briefing, a unanimity instruction is not required if multiple acts form a continuing course of criminal conduct. State v. Crane, 116 Wn.2d 315, 330, 804 P.2d 10 (1991). However, contrary to the State's assertion, the multiple acts at issue herein were not part of a continuing course of conduct. Rather, they are the culmination of two—*mutually exclusive*—versions of the incident in question. The officers testified that Crossland swung at Phipps; Crossland testified that she poked Phipps in the chest—no one testified that both acts occurred.

"expressly elect to rely only on" one act "in seeking the conviction").[4]

State v. Carson, 184 Wn.2d 207, 227-28, 357 P.3d 1064 (2015).

When a trial court does not properly instruct on unanimity, the error is harmless only if no rational trier of fact could have entertained a reasonable doubt that each act sufficient to constitute the crime charged was proved beyond a reasonable doubt. Kitchen, 110 Wn.2d at 406.

Herein, Crossland contends that a unanimity instruction was required because the jury was presented evidence of two acts that could have constituted the crime charged—the testimony of the officers that Crossland "swung" at Phipps and Crossland's testimony that she "poke[d]" Phipps in the chest. While it is true that evidence of both of these acts was presented, and that either act could have supported an assault in the third degree conviction,[5] Crossland's argument fails because the State elected to rely on the "swing" for the conviction.

As Crossland acknowledges, "in this case[,] the state only presented evidence of a single act of assault—the swinging arm." Br. of Appellant at 8. This was consistent with the State's argument throughout trial. The State called only the two officers as witnesses, both of whom testified to the swing. There

---

[4] In a related footnote, the court emphasized that "the State must not only discuss the acts on which it is relying, it must in some way disclaim its intention to rely on other acts." State v. Carson, 184 Wn.2d 207, 228 n.15, 357 P.3d 1064 (2015).

[5] Even the chest poke could have supported a finding that Crossland assaulted Phipps. The jury was instructed that:

> [a]n assault is an intentional touching or striking of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking or cutting or shooting is offensive if the touching or striking or cutting or shooting would offend an ordinary person who is not unduly sensitive.

Jury Instruction 6.

It is possible that an ordinary person would find it offensive to be poked in the chest by someone who is standing close to him and is "pretty upset" at the time.

was no mention of a chest poke, though Phipps did clarify that Crossland's swing at him did not make contact with his chest.[6] It was Crossland who, through her own testimony, presented evidence of the second act of assault—the chest poke.

Similarly, in closing argument, the State "clearly identified" the act upon which the assault charge was based. For example, the prosecutor argued, "[w]e heard from Officer Phipps that while he was turning the defendant around she turned back, was actually facing him, put her arm back and swung. While she apparently missed, she did make contact and hit him in the right back side. *There's your assault.*" (Emphasis added.) Moreover, the prosecutor asserted, "[o]n the second time [that Phipps had to direct Crossland toward the patrol vehicle] is when the assault occurred *and that's her swinging at Officer Phipps.*" (Emphasis added.)

In addition to relying solely on the swing as the basis for conviction, the State disclaimed any reliance on the chest poke as the basis for conviction. The State, in accordance with the officers' testimony, denied that the chest poke ever occurred. It argued that Crossland's testimony to the contrary should not be credited because she was motivated to fabricate a story to avoid conviction and, apart from this, her story was unreliable because, as she admitted, she had been drinking the night of the assault and was "buzzing pretty good."

---

[6] Q  Now, did she ever make any physical contact with your chest?
A  No.
Q  Would you agree that the area that would be described as your chest and the area where she made contact are not the same thing?
A  Correct.
Q  This is kind of the top back of your shoulder; is that right?
A  Yeah, I can agree with that.

In sum, by clearly identifying that the assault charge was based on the swing, rather than the chest poke, the State made an election. Thus, no unanimity instruction was constitutionally required.[7]

III

Crossland next contends that she was prevented from presenting her theory of the case to the jury. This is so, she asserts, because the trial court improperly refused to give the jury a voluntary intoxication instruction. We disagree.

A voluntary intoxication defense allows the jury to consider evidence of intoxication in determining whether the defendant acted with the intent required to commit the crime.[8] State v. Thomas, 123 Wn. App. 771, 781, 98 P.3d 1258 (2004). To obtain a voluntary intoxication instruction, a defendant must show (1) that the crime charged has a particular mental state as an element, (2) that there is substantial evidence of drinking, and (3) evidence that the drinking affected the defendant's ability to acquire the mental state at issue. State v. Gabryschak, 83 Wn. App. 249, 252, 921 P.2d 549 (1996). In other words, "the evidence must reasonably and logically connect the defendant's intoxication with the asserted inability to form the required level of culpability to commit the crime charged."

---

[7] Crossland also contends that her counsel was ineffective for failing to request a unanimity instruction. "Where the claim of ineffective assistance is based upon counsel's failure to request a particular jury instruction, the defendant must show he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice." State v. Thompson, 169 Wn. App. 436, 495, 290 P.3d 996 (2012). Because we conclude that Crossland was not entitled to a unanimity instruction, her ineffective assistance claim premised upon her attorney's failure to request the same fails.

[8] See also RCW 9A.16.090, which provides:
No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his or her condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular species or degree of crime, the fact of his or her intoxication may be taken into consideration in determining such mental state.

Gabryschak, 83 Wn. App. at 252-53. Because a person can be intoxicated and still able to form a particular mental state or so intoxicated as to be unconscious, somewhere between these extremes "is a point on the scale at which a rational trier of fact can conclude that the State has failed to meet its burden of proof with respect to the required mental state." Gabryschak, 83 Wn. App. at 254.

We review the trial court's determination that the facts of a case do not support a requested instruction for abuse of discretion. State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998). Instructions are adequate if they allow a party to argue its theory of the case and do not mislead the jury or misstate the law. State v. Stevens, 158 Wn.2d 304, 308, 143 P.3d 817 (2006).

Herein, the trial court refused Crossland's proposed voluntary intoxication instruction, ruling:

> In this case there are a number of things here to show that this instruction is not appropriate. Ms. Crossland did have fairly good control of her mental faculties. She knew where she lived, she knew she didn't live at that apartment. She was coherent enough to make a decision not to drive. She knew that she was being arrested. She knew that the officers were officers. Earlier she knew that she needed to collect her things, which she did. She testified that she remembers everything that happened. She says that she didn't need help walking down the stairs. There's different testimony but her testimony is that she didn't. And she left the apartment voluntarily. All of those things indicate to me that a voluntary intoxication instruction is not appropriate here.
>
> Again, as the State has argued, evidence of being drunk is not enough. There has to be substantially more and in this case it simply is not there. So I'm not going to give that instruction.

The trial court's reasoning is supported by case law and the record. While the evidence was undisputed that Crossland had been drinking the night that she assaulted Phipps, the evidence also indicated that she was aware of her own

- 9 -

actions and the circumstances at hand. Moreover, there is no evidence "that [s]he otherwise exhibited sufficient effects of the alcohol from which a rational juror could logically and reasonably conclude that h[er] intoxication affected h[er] ability to think and act in accord with the requisite mental state[]," Gabryschak, 83 Wn. App. at 255, in this case, the specific intent to touch or strike Phipps. Under these circumstances, the trial court did not abuse its discretion in rejecting the voluntary intoxication instruction.

IV

Finally, Crossland contends that insufficient evidence supports her conviction. This is so, she asserts, because the State failed to prove beyond a reasonable doubt that she acted with the specific intent to assault Phipps. Her contention is unavailing.

The due process clauses of the federal and state constitutions require that the government prove every element of a crime beyond a reasonable doubt. U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3; Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S.

at 319.

"The purpose of this standard of review is to ensure that the trial court fact finder 'rationally appl[ied]' the constitutional standard required by the due process clause of the Fourteenth Amendment, which allows for conviction of a criminal offense only upon proof beyond a reasonable doubt." State v. Rattana Keo Phuong, 174 Wn. App. 494, 502, 299 P.3d 37 (2013) (alteration in original) (quoting Jackson, 443 U.S. at 317-18), review denied, 182 Wn.2d 1022 (2015). This standard of review is also designed to ensure that the fact finder at trial reached the "subjective state of near certitude of the guilt of the accused," as required by the Fourteenth Amendment's proof beyond a reasonable doubt standard. Jackson, 443 U.S. at 315.

A claim of evidentiary insufficiency admits the truth of the State's evidence and all reasonable inferences from that evidence. State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). Circumstantial evidence and direct evidence can be equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). This court defers to the jury on questions of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Killingsworth, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).

To convict Crossland of assault in the third degree as charged, the State was required to prove that she: "assault[ed] a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault." Jury Instruction 4; accord RCW 9A.36.031(1)(g).

As provided in Jury Instruction 6, assault is defined as:

an intentional touching or striking of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking or cutting or shooting is offensive if the touching or striking or cutting or shooting would offend an ordinary person who is not unduly sensitive.

Accord WPIC 35.50.

As provided in Jury Instruction 7, for the element of intent, the State was required to prove that Crossland acted "with the objective or purpose to accomplish a result that constitutes a crime." Accord RCW 9A.08.010(1)(a); WPIC 10.01.

The evidence adduced herein showed that, when Phipps grabbed Crossland's shoulder for the second time, in order to direct her away from the apartment and toward his patrol car, she responded by using her whole body to forcefully swing her right arm at his head and that, despite Phipp's block, Crossland's arm made contact with the top of his shoulder.[9] Moreover, both officers testified that they perceived her actions to be intentional. Phipps testified that "striking" him appeared to be the purpose of her actions. When asked whether it was possible that Crossland was "just simply turning around," Phipps responded, "It happened too fast for her just turning around. . . . It was under power." It appeared to Phipps to be "an intentional punch" done out of anger. Lowrey also testified that Crossland's "strike" appeared to be intentional. He

---

[9] Crossland now claims that, regardless of whether she made contact with Phipps, she was only trying to free herself from him, not to strike him, and, thus, there was insufficient evidence that she specifically intended to assault him. Crossland's theory on appeal is contrary to the record. At trial, neither Crossland, nor anyone else, ever mentioned that she was trying to free herself from Phipps. Instead, Crossland adamantly denied swinging her arm at Phipps— under any circumstances or with any motivation. Crossland's hypothetical is entirely outside the record on appeal.

described her swing as a "haymaker" and "kind of a wild punch." He also described her demeanor as "[h]ysterical, volatile, . . . upset and irrational."

When viewed in the light most favorable to the State, the foregoing evidence was sufficient to support the jury's finding that Crossland acted with the specific intent to assault Phipps when she swung her arm toward his head.

Affirmed.

We concur:

Becker, J.

- 13 -