249 P.3d 202 (2011)
STATE of Washington, Respondent,
v.
DMarcus Dewitt GEORGE, Appellant.
No. 39085-0-II.
Court of Appeals of Washington, Division 2.
April 8, 2011.
*204 Kira Franz, Christopher Gibson, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Kathleen Proctor, Pierce County Prosecuting Atty. Ofc., Tacoma, WA, for Respondent.
HUNT, J.
¶ 1 DMarcus Dewitt George appeals his jury conviction for second degree felony murder. He argues that we should reverse and remand for a new trial because the trial court committed the following errors: (1) failing to instruct on self-defense to permit the jury to consider whether his actions were based on a reasonable apprehension of great bodily harm and imminent threat; (2) excluding his testimony as speculative; (3) excluding his testimony as hearsay; and (4) admitting evidence of prior bad acts that impermissibly showed his criminal propensity. In his Statement of Additional Grounds (SAG),[1] he argues that our review should be limited to whether his attorney's brief made a prima facie showing of reversible error because the State did not file a timely brief. Holding that the trial court erred in thwarting George's attempt to present self-defense, we reverse and remand for a new trial.

FACTS

I. HOMICIDE
¶ 2 On the evening of June 21, 2004, DMarcus Dewitt George slept in the backseat of his best friend Freddie McGrew's car while McGrew pulled into a Shell station to buy gasoline.[2] McGrew's girlfriend, Tamrah Dickman, who sat in the front seat, observed people in a car that was just leaving, looking intently at McGrew's car. McGrew went into the minimart to pay before pumping the gas.
¶ 3 After McGrew exited the minimart, one of the men Dickman had observed in the car pulling away, Rickie Millender, walked up to McGrew and blocked his path, confronting him with questions about a mutual friend's brutal killing, at which McGrew had been present. McGrew was able to move past *205 Millender, but Millender patted down McGrew's stomach, waist, and neck as McGrew pumped gas. McGrew tried to get back into his car to leave, but Millender prevented him from closing the door. McGrew was able to get "one leg and half of his body into the vehicle" before Millender punched him in the mouth. IX VRP at 1068. After Millender punched him, McGrew jumped back out of the car, and an altercation between the two men ensued in the parking lot.[3]
¶ 4 At about the time McGrew reached the gas pump, Dickman observed two other men she did not know standing side-by-side near the gas station's minimart. Alarmed, Dickman woke George from the backseat in time for him to see Millender confront and pat down McGrew and to observe the two other men standing nearby. George did not know any of these people; but he had previously experienced persons shooting at him while he was in McGrew's company, and he understood that the confrontation was about the murdered friend. George exited the car to assist McGrew. One of the two[4] men standing by the minimart, Isaiah Clark, stopped George and spoke to him when George tried to walk around the back of the car to reach McGrew and Millender.
¶ 5 George did not know Clark, and he felt intimidated because Clark was bigger and had bloodshot eyes, making him appear to be "high." X VRP at 1210. Clark was 6' tall and weighed over 200 pounds;[5] George was 6'1" tall and weighed only 160 pounds. George at first stood still. Then he began retreating toward the open car door from which he had just exited when Clark hit him on the back left side of his head, causing him (George) to fall halfway into the car. The strength of Clark's blow made George think that "[Clark] had hit [him] with something." XI VRP at 1288.
¶ 6 "[H]oping [to] scare [Clark]," XI VRP at 1234, who was on top of him, George reached inside the car for his gun in the pocket of his jacket, which was on the backseat. George held the gun in his right hand between himself and Clark, hoping that Clark would see the gun, be frightened, and stop. But Clark, unresponsive to the gun, gripped George's left forearm and tried to drag him out of McGrew's car. Tightening his grip on George's arm, Clark continued to pull George out of the car.
¶ 7 Although George remembered pointing the gun, he did not remember pulling the trigger the first time. He did, however, remember thinking that he "was going to die," that he was "kind of helpless," and that he was "shocked" when he heard the first shot. XI VRP at 1237. George fired the gun a total of four times. When the shooting stopped, George felt Clark's grip release. George, Dickman, and McGrew got back into McGrew's car and drove away. Clark died from these gunshot injuries.

II. PROCEDURE
¶ 8 In 2008, police arrested George in Virginia and returned him to Tacoma for trial. The State charged him with first degree murder, or, in the alternative, second degree felony murder based on first or second degree assault. He proceeded to a jury trial.

A. Instructions
¶ 9 George proposed standard self-defense instructions, which the trial court rejected.[6] *206 The trial court also deleted from its standard homicide instructions any references to self-defense or justifiable homicide.[7]
¶ 10 The trial court ruled that (1) George had not met his burden to introduce evidence showing that he had subjectively believed, in good faith, that he was in imminent danger of great bodily harm when he grabbed his gun from the backseat of McGrew's car and pulled the trigger; (2) although George claimed he had never been "so scared in his life," his fear was not objectively reasonable, VRP (Feb. 10, 2009) at 1379, especially in light of the medical examiner's testimony that Clark was shot in the back in a downward direction, indicating that Clark had been retreating or on his knees at some point when he was shot; and (3) "the fatal lethal force to Mr. Clark was not justified under these circumstances." VRP (Feb. 10, 2009) at 1383. George took exception to the trial court's rulings, arguing that it had misstated the medical examiner's evidence and was improperly "putting itself in the position of the trier of fact." VRP (Feb. 10, 2009) at 1384.

B. Convictions and Sentencing
¶ 11 In addition to first degree murder, the trial court instructed the jury on the lesser crimes of intentional murder and manslaughter. In the alternative, the trial court instructed the jury on felony murder based on assault. The trial court gave the jury no instructions on George's self-defense theory. Nevertheless, the jury acquitted George of first degree murder and was unable to reach a verdict on intentional second degree murder. Instead, the jury found him guilty of first degree manslaughter, count I, or in the alternative, second degree felony murder, count II. The jury also found that George had been armed with a firearm while committing either alternative charge.
¶ 12 Noting the firearm, the trial court sentenced George to the top of the standard range: 220 months of confinement for felony murder, plus an additional 60 months for the firearm enhancement. George appeals.

ANALYSIS

I. SELF-DEFENSE INSTRUCTION
¶ 13 George argues that the trial court committed reversible error by refusing to instruct the jury on the law of self-defense because there was some evidence which, if believed by the jury, would have shown that George acted on a reasonable apprehension of great bodily harm and imminent threat. We agree.

A. Standard of Review
¶ 14 The standard of review for a trial court's refusal to instruct the jury on self-defense depends on whether the reason for such refusal was based on fact or law. State v. Walker, 136 Wash.2d 767, 771-72, 966 P.2d 883 (1998).
If the trial court refused to give a self-defense instruction because it found no evidence supporting the defendant's subjective belief of imminent danger of great bodily harm, an issue of fact, the standard of review is abuse of discretion. If the trial court refused to give a self-defense *207 instruction because it found no reasonable person in the defendant's shoes would have acted as the defendant acted, an issue of law, the standard of review is de novo.
State v. Read, 147 Wash.2d 238, 243, 53 P.3d 26 (2002) (citing Walker, 136 Wash.2d at 771-72, 966 P.2d 883) (emphasis added). This second "reasonable person" test involves interrelated issues of law and fact because the court must place itself in the defendant's shoes and analyze the facts and circumstances known to the defendant but then determine what a reasonable person would do. Read, 147 Wash.2d at 243, 53 P.3d 26.
¶ 15 Here, the trial court refused to give a self-defense instruction to the jury, not because of a factual dispute, which is reviewable only for abuse of discretion. Rather, the trial court ruled as a matter of law that, despite how George had subjectively perceived the situation, he did not meet the objective "reasonable person" test. VRP (Feb. 10, 2009) at 1385. Therefore, we review de novo the trial court's refusal to give George's requested self-defense instructions. Walker, 136 Wash.2d at 771-772, 966 P.2d 883 (citing State v. Lucky, 128 Wash.2d 727, 731, 912 P.2d 483 (1996), overruled on other grounds by State v. Berlin, 133 Wash.2d 541, 544, 947 P.2d 700 (1997)). In so doing, we consider the factual evidence in the light most favorable to George. State v. Jelle, 21 Wash.App. 872, 873, 587 P.2d 595 (1978).

B. The Defendant's Burden: Some Evidence of Self-Defense
¶ 16 When a defendant in a murder prosecution claims self-defense and asks the trial court to instruct the jury on self-defense, the defendant has the burden of introducing some evidence demonstrating that (1) the killing occurred in circumstances amounting to defense of life, and (2) he had a reasonable apprehension of great bodily harm and imminent danger. RCW 9A.16.050[8]; State v. Walden, 131 Wash.2d 469, 473, 932 P.2d 1237 (1997). The trial court must view the evidence in the light most favorable to the defendant. State v. Callahan, 87 Wash.App. 925, 933, 943 P.2d 676 (1997). The defendant's burden of "some evidence" of self-defense is a low burden. State v. Janes, 121 Wash.2d 220, 237, 850 P.2d 495 (1993). Indeed, the evidence need not even create a reasonable doubt.[9]State v. McCullum, 98 Wash.2d 484, 488, 656 P.2d 1064 (1983). But a self-defense instruction is not available to an aggressor. Walden, 131 Wash.2d at 482-83, 932 P.2d 1237.
¶ 17 The trial court determines whether the jury should receive a self-defense instruction by applying a mixed analysis, with both subjective and objective components. Read, 147 Wash.2d at 242-43, 53 P.3d 26; Janes, 121 Wash.2d at 238, 850 P.2d 495. The subjective component requires the trial court to place itself in the defendant's shoes and to view the defendant's actions in light of all the facts and circumstances known to the defendant. Walker, 136 Wash.2d at 772, 966 P.2d 883. The objective component requires the trial court to determine what a reasonably prudent person would have done in the defendant's situation. Walker, 136 Wash.2d at 772-73, 966 P.2d 883. The imminent threat of great bodily harm does not actually have to be present, so long as a reasonable person in the defendant's situation could have believed that such threat was present. See State v. LeFaber, 128 Wash.2d 896, 900-01, 913 P.2d 369 (1996), abrogated on other grounds by State v. O'Hara, 167 Wash.2d 91, *208 217 P.3d 756 (2009). Thus, considering both the subjective and objective components, the trial court must determine (1) whether the defendant produced any evidence to support the claim he or she subjectively believed, in good faith, that he or she was in imminent danger of great bodily harm; and (2) whether this belief, viewed objectively, was reasonable. Walker, 136 Wash.2d at 773, 966 P.2d 883.
¶ 18 George argues that, taken in the light most favorable to him, he produced sufficient evidence that his fear was reasonable. We agree. Examining this issue de novo, the subjective component requires us to place ourselves in George's shoes and to view his actions in light of all the facts and circumstances known to him. Walker, 136 Wash.2d at 772, 966 P.2d 883. George encountered Clark after being abruptly awakened by calls for help from his best friend's girlfriend (Dickman). George awoke to see Millender confronting his best friend, apparently checking McGrew for weapons, and punching him. Although George did not know the people confronting McGrew or himself, he quickly understood that the confrontation and Millender's anger with McGrew concerned the murder of Millender's friend, which frightened George even more.
¶ 19 George testified that he felt intimidated by Clark's expression, larger size, and bloodshot eyes, from which George concluded that Clark was under the influence of drugs. George rightly understood Clark to be acting in support of Millender and believed that Clark carried a weapon, particularly after Clark hit him so hard that he believed Clark must have hit him with an object. Clark's blow caused George to fall; and although that blow was not by itself life-threatening, the danger appeared to be rapidly escalating. George felt that under the circumstances, he "was going to die." XI VRP at 1234.
¶ 20 George, who had been unarmed, had fallen halfway into McGrew's vehicle. With the larger Clark on top of him, George retrieved his gun from his jacket on the back-seat and pointed it at Clark, hoping that Clark would be afraid and thus stop his attack. But Clark showed no fear of the gun, and George fired. Clark's grip on George's arm then tightened, and Clark pulled George out of the vehicle, causing George to feel even more fearful, recalling, "I just remember his face just coming at me." XI VRP at 1238. So George fired again. Clark did not let go of George until all the shots were fired.
¶ 21 Considering these facts, we find unpersuasive the State's comparisons to Walker, in which the facts differ markedly.[10] Walker, for example, was a willing participant, who intentionally engaged in mutual combat with the victim. Having previously discovered his wife's affair, Walker initially confronted his wife's lover in the lover's yard across the street. The man pushed Walker back with his stomach and "head-butted" him, after which Walker returned to his own home. Walker, 136 Wash.2d at 769, 966 P.2d 883. Walker had no reasonable grounds to fear great bodily harm from this man. Walker, 136 Wash.2d at 778, 966 P.2d 883. Yet, despite some cooling off time, in complete safety and in specific preparation for combat with his wife's lover, Walker purposefully armed himself with a knife, and chose to return outside. After, his rival called across the street to him, Walker accepted his invitation to reengage in a fight. Walker, 136 Wash.2d at 770, 966 P.2d 883.
¶ 22 Applying the Walker test here, we examine whether a reasonably prudent person would have acted as George did in his situation. Walker, 136 Wash.2d at 772-73, 966 P.2d 883. We note that an imminent threat of great bodily harm need not actually have been present, so long as a reasonable person in George's situation would have believed that such threat was present. LeFaber, 128 Wash.2d at 899-900, 913 P.2d 369. We weigh whether George reasonably felt an imminent threat of great bodily harm within the context of his circumstances: Dickman's waking up George with a plea for help; Millender's *209 patting down McGrew, which implied armed violence; Millender's punching McGrew and the ensuing scuffle between the two; the confrontation being about the murder of Millender's friend; George's previous experiences of people shooting at him; his belief that Clark was armed; and the larger Clark's advancing toward George, appearing to be under the influence of drugs, knocking George down with what George felt was some sort of object, and then getting on top of George halfway inside McGrew's car, into which George had fallen, and pulling George back outside the car. In Walker, the Supreme Court affirmed the trial court's refusal of Walker's requested self-defense instructions, holding that no evidence supported Walker's claimed fear of great bodily harm and, "[i]n essence, Walker took a knife to a fistfight." Walker, 136 Wash.2d at 776, 966 P.2d 883. Here, in contrast, from George's point of view, a potentially deadly encounter came to him.
¶ 23 The facts as they reasonably appeared to George, namely an "imminent threat" of great bodily harm, outweigh the facts emphasized by the trial court, namely Clark's limited physical battery of George. In its reasoning, the trial court discounted the contextual circumstances. For example, the trial court said, "Not a blow that was with sufficient force to cause him to lose consciousness, but a blow that simply knocked him either off his feet or into the car." VRP (Feb. 10, 2009) at 1381. Imminent threat is not necessarily an immediate threat but instead acknowledges the circumstance of "hanging threateningly over one's head; menacingly near." Janes, 121 Wash.2d at 241, 850 P.2d 495 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1130, 1129(1976)).
¶ 24 Nor does imminent threat require any actual physical assault, let alone an attempted lethal assault. Janes, 121 Wash.2d at 241, 850 P.2d 495 (citing State v. Walker, 40 Wash.App. 658, 663, 700 P.2d 1168 (1985) review denied, 104 Wash.2d 1012, 1985 WL 320835 (1985)). Here, as the trial court correctly opined, "[Y]ou don't shoot somebody for hitting you." VRP (Feb. 10, 2009) at 1382. Nevertheless, the trial court mischaracterized the situation as it appeared to George, especially by incorrectly assuming that Clark's initial physical battery of George offered the only justification for his fear. George, in contrast, justified his fear by showing dangerous circumstances with the danger escalating.
¶ 25 George's trial counsel expressly objected to the trial court's refusal to give the jury a self-defense instruction, stating, "I believe the Court is putting itself into the position of the trier of fact . . . . as far as whether or not my client was acting in self-defense." VRP (Feb. 10, 2009) at 1384-85. We agree. It is not the trial court's prerogative to resolve the question of whether a defendant in fact acted in self-defense. George's evidence ultimately may not have been sufficient to create a reasonable doubt in the jury's mind about the charged homicide; nevertheless, a trial court may not deny a self-defense instruction where credible evidence exists to support giving such instruction. McCullum, 98 Wash.2d at 488, 656 P.2d 1064.
¶ 26 To ensure due process to a criminal defendant, a trial court must provide considerable latitude in presenting his theory of his case; more specifically, a trial court should deny a requested jury instruction that presents a defendant's theory of self-defense only where the defense theory is completely unsupported by evidence, which was not the case here. State v. Barnes, 153 Wash.2d 378, 382, 103 P.3d 1219 (2005). We recently articulated the constitutional due process aspects of a defendant's right to present his theory of the case in the context of jury instructions as follows:
Due process requires that jury instructions (1) allow the parties to argue all theories of their respective cases supported by sufficient evidence, (2) fully instruct the jury on the defense theory, (3) inform the jury of the applicable law, and (4) give the jury discretion to decide questions of fact.
State v. Koch, 157 Wash.App. 20, 33, 237 P.3d 287 (2010) (citations omitted), review denied, 170 Wash.2d 1022, 245 P.3d 773 (2011). Consistent with the Supreme Court's decision in Barnes, we held that "at the very least, the instructions must reflect a defense arguably *210 supported by the evidence." Koch, 157 Wash.App. at 33, 237 P.3d 287 (citing Barnes, 153 Wash.2d at 382, 103 P.3d 1219).
¶ 27 Acknowledging George's well-settled constitutional right to present his theory of self-defense, sufficiently supported by the record, and examining the record de novo in the light most favorable to him, we hold that (1) George's evidence of his fear of imminent death or great bodily harm was objectively reasonable; and (2) therefore, it was reversible error for the trial court to refuse to instruct the jury on self-defense, thereby precluding the jury from considering whether George acted in self-defense when he shot Clark.

II. EVIDENTIARY RULINGS
¶ 28 For the first time on appeal, George makes three evidentiary arguments, which, he acknowledges, "standing alone, do not warrant reversal." Br. of Appellant at 2. Although these evidentiary questions are generally likely to arise during retrial on remand, their context will surely differ. Therefore, we neither address nor rule on these non-prejudicial, unpreserved evidentiary issues.

III. ADDITIONAL ARGUMENTS
¶ 29 Relying on State v. Wilburn, 51 Wash.App. 827, 829-30, 755 P.2d 842 (1988), George argues in his SAG that, because the State did not file a timely brief as required by RAP 10.2(c), we should limit our review to whether his attorney's brief made a prima facie showing of reversible error and that we should sanction the State. This argument fails.
¶ 30 First, the State did not violate RAP 10.2(c). Instead, the State moved for an extension of time to file its brief, attached a detailed affidavit in support, and served George a copy of its motion. We granted this motion, just as we granted George's motion for an extension of time to file his brief under RAP 18.8.
¶ 31 Next, even if the State had not timely filed its brief, George confuses his argument that the State filed a late brief with circumstances where a party fails to file any brief, in which case RAP 11.2(a) bars that party from presenting oral argument. Moreover, in arguing that where the respondent has failed to file a brief, we must limit review to whether the appellant's brief makes a prima facie showing of reversible error, the precedent on which George relies has been superseded.[11] In Adams v. Dep't. of Labor and Indus., 128 Wash.2d 224, 905 P.2d 1220 (1995), our Supreme Court held that where a party fails to submit a brief, an appellate court (1) is entitled to make its decision based on oral argument, argument in the parties' briefs, and the record before it; and (2) is no longer confined to reviewing whether the appellant has made prima facie showing of reversible error. Adams, 128 Wash.2d at 229, 905 P.2d 1220. Here, the State submitted a timely brief; thus, no sanctions are appropriate, and there is no corresponding need to curtail our decision making process.
¶ 32 Reversed and remanded for a new trial.
I concur: VAN DEREN, J.
ARMSTRONG, J. (dissenting).
¶ 33 Because I do not agree that George established he was entitled to a self-defense instruction, I respectfully dissent.
¶ 34 A defendant cannot present a self-defense instruction to the jury without first producing some evidence that he feared an imminent threat of great bodily harm and that his fear was objectively reasonable. See State v. Walker, 136 Wash.2d 767, 772-73, 966 P.2d 883 (1998). "The importance of the objective portion of the inquiry cannot be underestimated. Absent the reference point of a reasonably prudent person, a defendant's subjective beliefs would always justify the homicide." Walker, 136 Wash.2d at 772, 966 P.2d 883. A simple battery cannot justify the taking of a human life unless the facts of a particular case show a reasonable person in the defendant's shoes could have reasonably believed that great bodily harm would result from the battery. Walker, 136 *211 Wash.2d at 774-75, 966 P.2d 883. If there is no reasonable ground for the person attacked to believe that he "`is in imminent danger of death or great bodily harm, and it appears to him that only an ordinary battery is all that is intended,'" then he has no right to repel the assault with deadly force. Walker, 136 Wash.2d at 777, 966 P.2d 883 (quoting State v. Walden, 131 Wash.2d 469, 475, 932 P.2d 1237 (1997)) (emphasis omitted).
¶ 35 Here, George produced no evidence demonstrating that his fear that Clark posed an imminent threat of death or great bodily harm was objectively reasonable. George shot Clark four times after Clark punched him once in the head and attempted to drag him out of the van. George did not know Clark and had no history with him, Clark made no verbal threats from which George could infer that he intended more than a simple battery, and George never saw Clark or any other person produce a weapon. That the confrontation was related to the murder of a friend, a violent incident that occurred in another time and place, and that Millender patted down McGrew and failed to uncover a weapon, does not make it more likely that Clark was armed or posed an imminent threat of death or great bodily harm to George. Because George failed to offer any evidence from which a reasonable person could conclude that Clark intended anything beyond an ordinary battery, I would affirm the trial court's finding that George's fear was not objectively reasonable.
NOTES
[1] RAP 10.10.
[2] Post-conviction, on appeal, we view the facts in the light most favorable to the defendant. State v. Jelle, 21 Wash.App. 872, 873, 587 P.2d 595 (1978).
[3] Most of the witnesses at the gas station described a fistfight. One, however, described only a verbal confrontation.
[4] The record identifies the other man only as the "white guy." X VRP at 1193.
[5] At autopsy, Clark's body weighed 207 lbs. Although the medical examiner's report lists Clark's weight as 229 pounds, the examiner testified that Clark had likely weighed about 275 pounds during the incident. The examiner then describes Clark as "[s]ix feet, over 200 pounds." VIII VRP at 886.
[6] George requested and the trial court refused to give the following jury instructions:

ManslaughterSecond DegreeCriminal NegligenceDefinition.
11 Washington Practice: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 28.05 (3d ed. 2008) (WPIC).
ManslaughterSecond DegreeCriminal NegligenceElements. WPIC 28.06. Excusable HomicideDefinition. WPIC 15.01.
Great Personal InjuryJustifiable Homicide Justifiable Deadly Force in Self-DefenseDefinition. WPIC 2.04.01.
Justifiable HomicideDefense of Self and Others. WPIC 16.02.
Justifiable HomicideResistance To Felony. WPIC 16.03.
AggressorDefense of Self. WPIC 16.04.
NecessaryDefinition. WPIC 16.05.
Justifiable HomicideActual Danger Not Necessary. WPIC 16.07.
No Duty To Retreat. WPIC 16.08.
Self-defense ReimbursementOral Introductory Instruction. WPIC 17.06.
Self-defense ReimbursementConcluding Instruction. WPIC 17.06.01.
[7] The trial court deleted reference to justifiable homicide and self-defense (denoted here with strike-through) from the following WPIC instructions it gave to the jury:

MurderSecond DegreeIntentionalDefinition. [WPIC] 27.01:
A person commits the crime of murder in the second degree when with intent to cause the death of another person but without premeditation, he or she causes the death of such person or of a third person [unless the killing is [excusable] [or] [justifiable]].
Clerk's Papers (CP) at 41.
ManslaughterFirst DegreeRecklessDefinition. WPIC 28.01:
A person commits the crime of manslaughter in the first degree when he or she recklessly causes the death of another person [unless the killing is [excusable][or][justifiable]].
CP at 43.
[8] RCW 9A.16.050 provides:

Homicide is also justifiable when committed either: (1) In the lawful defense of the slayer, or his or her husband, wife, parent, child, brother, or sister, or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished; or (2) In the actual resistance of an attempt to commit a felony upon the slayer, in his presence, or upon or in a dwelling, or other place of abode, in which he is.
[9] But, if

there is no reasonable ground for the person attacked . . . to believe that his person is in imminent danger of death or great bodily harm, and it appears to him that only an ordinary battery is all that is intended, he has no right to repel a threatened assault by the use of a deadly weapon in a deadly manner.
Walden, 131 Wash.2d at 475, 932 P.2d 1237.
[10] The similar facts are not relevant to the critical "instigator" distinction: Like Clark, Walker's victim was larger and stronger; thus, Walker, like George, armed himself, both asserting self-defense. Walker, 136 Wash.2d at 770, 966 P.2d 883. Unlike Walker, however, George did not instigate the fight that resulted in the death of the unarmed larger man.
[11] See State v. Wilburn, 51 Wash.App. 827, 829-30, 755 P.2d 842 (1988), superseded by Adams v. Dep't. of Labor and Indus., 128 Wash.2d 224, 229, 905 P.2d 1220 (1995).