# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46705-4-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DMARCUS D. GEORGE, | |
| Appellant. | |

SUTTON, J. — A jury found Dmarcus George guilty of two counts of second degree murder for the death of Isaiah Clark. The trial court dismissed the jury's guilty verdict on the felony murder charge and sentenced George to a standard range sentence. George appeals, arguing that (1) repeated instances of evidentiary irregularities and prosecutorial misconduct deprived him of a fair trial, (2) the trial court violated double jeopardy by only dismissing the felony murder conviction conditionally, and (3) the case should be remanded to allow George to seek an exceptional sentence downward based on his youth at the time of the crime. We affirm George's conviction and sentence for second degree murder but remand to the trial court to strike the language in George's judgment and sentence which refers to the jury's guilty verdict on count II, the felony murder charge.

## FACTS

### I. BACKGROUND

On June 21, 2004, George, Fred McGrew, and Tamrah Dickson arrived at a gas station in Tacoma. George was asleep in the backseat of the car. While McGrew was trying to get gas, he

was confronted by Rickie Millender. When Millender confronted McGrew, Dickson woke George. Millender's friend, Clark, was with Millender at the gas station. George shot Clark four times. Clark died of his injuries.

George fled the state. Four years later, George was arrested and extradited to Washington. The State charged George with one count of first degree premeditated murder and one count of second degree felony murder. Both counts included a firearm enhancement. At George's first trial, the trial court denied his motion to instruct the jury on self-defense. *State v. George*, 161 Wn. App. 86, 92-93, 249 P.3d 202 (2011). A jury found George guilty of the lesser included offense of first degree manslaughter and second degree felony murder. *George*, 161 Wn. App. at 94. George appealed. *George*, 161 Wn. App. at 94. This court reversed the trial court's ruling to not instruct the jury on self-defense and remanded the case for a new trial. *George*, 161 Wn. App. at 101-02.

On September 6, 2012, the State filed an amended information charging George with one count of second degree intentional murder (count I) and one count of second degree felony murder (count II). Both counts included a firearm enhancement. Prior to George's second trial, the trial court also ruled that George's first trial would be referred to as a "prior hearing" rather than a "prior trial." Verbatim Report of Proceedings (VRP) (Aug. 19, 2014) at 5.

## II. CURRENT JURY TRIAL

George's second trial began in August 2014. Laura Devereaux, who witnessed the shooting, testified that when she arrived at the gas station she observed McGrew and Millender being loud, but she was not concerned. The verbal confrontation began to escalate, but there was no physical altercation. Then Devereaux heard a gunshot and saw a man later identified as Clark

2

"hit the ground." VRP (Aug. 14, 2014) at 623. Devereaux ran into the gas station to tell the attendant to call the police. When she came back outside, a man and woman were standing over Clark's body going through his pockets. Devereaux did not see either of them take anything from the pockets.

Monica Johnson, who witnessed the shooting, testified that when she arrived at the gas station, she could hear individuals arguing near a Cutlass. As Johnson was walking into the store, she walked by a man, later identified as Clark, standing off to the side and she asked what was happening. Clark just shrugged. Johnson walked into the store to pay for her gas and noticed that the arguing was escalating. As the arguing got louder, Johnson saw a man get out of the Cutlass and pull a gun. Johnson identified George as the man she saw exit the Cutlass. Almost immediately after exiting the car, George began shooting Clark.

Johnson testified that she would never forget the look on George's face when he shot Clark. The State asked what the look was and the following exchange took place:

[JOHNSON]: It was a very menacing, very –

    Ms. Corey: Objection, Your Honor, to that opinion, conclusion.

    The Court: Well, overruled.

    Ms. Corey: It's improper demeanor testimony.

    Court: Overruled.

    So, the question again was?

[STATE]: You said the look on the defendant's face was menacing?

[JOHNSON]: Yes.

    Ms. Corey: Your Honor, I'm going to object. This is testimony that is outside of case law.

    [STATE]: You're Honor, I'm going to –

    Court: Overruled. So, the question is what, Mr. Williams?

3

[STATE]: You said you saw the defendant's face and he had a menacing look on his face?

[JOHNSON]: Yes.

[STATE]: Can you help us understand what you mean by that?

[JOHNSON]: There was no fear on the face. It was more – it was just a nonchalant. It was – it was a monster. It was nonchalant, like it was nothing to it. I'll never forget it.

> Ms. Corey: Objection, Your Honor. I ask that these descriptions be stricken.
>
> Court: Well, overruled. You can certainly cross-examine her about this.

VRP (Aug. 19, 2014) at 63-64. Johnson also testified that, right before Clark was shot, he was not doing anything except standing near the car.

At the trial court's next recess, George moved for a mistrial based on Johnson's comments, specifically that Johnson called George a "monster." VRP (Aug.19, 2014) at 80. Although the trial court noted that the specific use of the word "monster" was unfortunate, the trial court also ruled that the answer was not responsive to the question. The trial court denied George's motion for a mistrial.

Later during Johnson's testimony, the State asked Johnson to refresh her memory with transcripts from an interview she gave in the original investigation. Specifically, the State asked Johnson to review a page of the transcript to refresh her memory as to what was said by a man she saw rummaging through Clark's pockets after he was shot. Johnson responded:

I recall, after reading the statement I gave the next day, that he had also said, "This is the same guys who shot my home boys a certain time ago, a week ago," or to that effect.

4

VRP (Aug. 19, 2014) at 94. The trial court immediately dismissed the jury. The trial court clarified that the statement the witness gave was actually on a different page than the State had asked Johnson to review.

George moved for another mistrial arguing that the statement was improper ER 404(b) evidence that was too prejudicial to be cured without a new trial. The State responded that it would agree to a stipulation that there was no evidence that George had participated in any shooting before June 21, 2004. The trial court denied George's motion for a mistrial. Instead, the trial court gave the jury the following curative instruction:

> Now, you are to disregard the last statement of Ms. Johnson. Statements made by others in the presence of a witness and repeated by that witness may be inaccurate. There is no evidence that Dmarcus George participated in any shooting that occurred prior to June 21st, 2004.

VRP (Aug. 19, 2014) at 116.

Michael Clark,[1] Isaiah Clark's older brother, testified that, on the day of the shooting, Clark's friend Millender came to his mother's house and told him that Clark had been shot. During cross-examination, George asked what Millender's demeanor was when he arrived at the house. Michael responded, "He was upset, saying that he shot him like their other friend who had been shot before." VRP (Aug. 19, 2014) at 163. The State objected and asked the trial court to strike the response. The trial court agreed and instructed the jury to disregard the statement.

At trial, George testified that, when Dickson woke him up, she was scared and concerned Millender was going to do something to McGrew. George saw Millender confront McGrew and began exiting the car. George intended to try to diffuse the situation, but Clark began approaching

---

[1] We refer to Michael Clark by his first name for clarity. We intend no disrespect.

the car. George testified that Clark made "a gesture with his hand around his waist and at the time I perceived he had a weapon, so I stopped." VRP (Aug. 28, 2014) at 70. Then, when George saw McGrew start to get in the car, George turned around to get in the backseat. As George bent down to get in the car, Clark hit him in the back of the head. George testified that "[i]t felt like he hit me with a piece of metal." VRP (Aug. 28, 2014) at 78. And, because he already believed that Clark had a weapon, George believed Clark had hit him with a gun. At that point, George testified that he believed he was going to die, so he reached for his firearm and shot Clark multiple times.

During cross-examination, the State had George read portions of his testimony from the first trial.[2] Before introducing the specific statements George made, the State asked if George understood how serious the stakes were at the time he made the statements. George objected and the State asked to be heard outside the presence of the jury. The State informed the trial court that it wanted to inform the jury that George had testified at a prior trial so that the jury would understand that the stakes were just as high when George made his original statement as they were at the current trial. George objected. The trial court sustained the objection and explained that the prior trial would be referred to as a proceeding or hearing, and that the rules for how to refer to the prior trial would not be changed at this late stage of the trial.

The State questioned George about whether he had made previous statements about seeing Clark with a gun and the following exchange took place:

> [STATE]:    I'm going to read the question [from the 2009 transcript]. Please read the answer you gave. "And you don't see a gun or any weapon in [Clark's] hand?" Your response, please?
>
> [GEORGE]:   "I didn't see one, but I did – like I wasn't trying to look. I didn't know if he had one. I didn't know."

---

[2] The testimony was admitted as a statement of party opponent.

6

[STATE]:    So, again, this would have been another opportune time for you to say that you saw him making a motion with his waistband or that when he punched you, you though it was a gun that he clubbed you with or that when you were in the car struggling, you thought you saw a gun?

[GEORGE]:    I believe I did say that he hit m[e] with a hard object, but I left out everything about – I never said that I seen (sic) a gun. It appeared to me that he had a gun.

[STATE]:    Is that what you said there?

[GEORGE]:    No. This is what I've always said. I never said that I seen (sic) a gun. It appeared that he had a gun.

[STATE]:    And, again, going back to your answer from 2009 –

[GEORGE]:    I understand –

[STATE]:    -- when you were asked if you saw a gun or any weapon in [Clark's] hand, your response was: "I didn't see one, but I didn't, like I wasn't trying to look. I didn't know if he had one. I didn't know."

That's your response, correct?

[GEORGE]:    That's what it – that's what it says, sir.

VRP (Aug. 28, 2014) at 126-27.

Later, when George testified that he reached for his weapon because it appeared to him that Clark had a gun, the State asked, "[T]his is the weapon you didn't mention at the prior trial, right?" VRP (Aug. 28, 2014) at 129-30. The trial court asked the State to rephrase the question. The State then asked, "The weapon you're saying he had, now that you're saying he had, you didn't say that at the prior trial?" VRP (Aug. 28, 2014) at 130. George objected and asked to make a motion outside the presence of the jury based on "deliberate misconduct." VRP (Aug. 28, 2014) at 130. The trial court overruled the objection and informed George that it would hear the motion later.

The State's cross-examination of George concluded without further incident and the trial court excused the jury to hear George's motion. George moved for a mistrial and sanctions against the State based on the State's reference to the prior trial. The State apologized for using the word

"trial" and claimed it was "a slip of the tongue in the heat of questioning." VRP (Aug, 28, 2014) at 143. The trial court determined that the prosecutor's reference to the prior trial did not constitute deliberate misconduct and asked George for a proposed remedy. George responded that the only remedy was a mistrial because the entire trial strategy would have been different if he had known that the jury was going to be informed that there was a prior trial.

The trial court denied the motion for a mistrial because it did not believe the prosecutor's statement constituted deliberate misconduct. However, the trial court invited George to propose any curative instructions that he believed would be helpful. George suggested that the trial court provide the jury with "a list of all the witnesses and a list of – they've heard many references to transcripts and statements – is that we give them a list, with regard to the transcripts, the date of the transcripts, whether the questions were asked on direct or cross or redirect or recross so that they know." VRP (Aug. 28, 2014) at 150. The trial court declined to give the instruction because it would be "extraordinarily difficult to draft and would be extremely confusing to the jury." VRP (Aug. 28, 2014) at 152. George declined to propose any other remedy short of a mistrial, which the trial court again denied.

### III. CLOSING ARGUMENT

During closing argument, the prosecutor focused on the differences between George's 2009 trial testimony and his current testimony–specifically, the prosecutor focused on George's current testimony that Clarke was armed with a gun. George objected to these references twice during the prosecutor's argument, and the trial court held a sidebar on each occasion. After the prosecutor finished his closing argument, the trial court excused the jury. George again moved for a mistrial based on his prior objections made during the prosecutor's closing argument.

George argued that the prosecutor's arguments, that George did not raise self-defense in the prior court hearing, constituted deliberate misconduct. The trial court stated:

> I did not understand [the prosecutor] to say self-defense wasn't raised as an issue before. [W]hat he said was very important things were at stake in 2009 and there was no testimony about Clark having a gun. That's what I understood him to say.

VRP (Sept. 2, 2014) at 105. The trial court denied the motion for a mistrial. After obtaining a transcript and the prosecutor's PowerPoint, George renewed the motion because he argued that the prosecutor had falsely argued to the jury that George had left out "the most important fact" in his 2009 testimony and that his 2009 testimony "was not self-defense." VRP (Sept. 2, 2014) at 113. The trial court reiterated its understanding of the State's argument:

> Well, I don't think he was stating that [George did not claim self-defense in 2009]. He was stating that the facts in 2009 didn't establish self-defense and he's saying he thinks your client then fabricated a story about the gun to try to get a better claim in self-defense. That's my understanding of his argument. Maybe I'm wrong. Whether the jury believes that, it's up to them.

VRP (Sept. 2, 2014) at 109-10. The trial court did not change its ruling on the motion for a mistrial. However, the trial court explicitly told George's counsel that she could tell the jury that George had testified in 2009 that he acted in self-defense. But the trial court also told defense counsel that she could not inform the jury that the prior conviction had been reversed because the prior trial court had denied George's instruction on self-defense and thus, the jury had not considered the claim of self-defense at the prior trial.

George also objected several times during the prosecutor's rebuttal closing argument. First, he objected because the prosecutor improperly argued about George's prior behavior with violence and being armed, which George argued was improper ER 404(b) evidence. Second, he

objected because he believed that the prosecutor misstated evidence regarding George's testimony at trial. Third, George objected because he believed the prosecutor misstated the law on self-defense. Fourth, George objected based on the prosecutor's misstatement of the evidence. The trial court overruled all these objections.

After the prosecutor finished his rebuttal closing argument, George moved for a fifth mistrial based on his prior objections to the rebuttal closing argument. The trial court made the following ruling:

> I do not think that [the State] intentionally . . . or negligently misstated the law. The law is in the instructions. The jurors are told that. There are different inferences that could be made. [The State] is entitled to argue the inferences she thinks are made. You're entitled to argue the inferences you think can be made from the evidence. There may be more than one potential inference. So, again, I'm going to deny the motion for a mistrial.

VRP (Sept. 3, 2014) at 183. The trial court also reminded George that the jury was instructed that the law was given to them in the written instructions, not in the attorney's argument.

## IV. VERDICT AND SENTENCING

The jury found George guilty of both counts of second degree murder. The jury also found that George was armed with a firearm at the time of the commission of the crime. The trial court entered judgment on the jury's verdict for count I. The judgment and sentence also states:

> The court DISMISSES without prejudice Count II, the guilty verdict for Murder 2 [degree] w/FASE, on double jeopardy grounds given the conviction for Count I.

Clerk's Papers at 380. The State recommended a sentence at the high-end of the standard sentencing range. George asked that the trial court impose a low-end sentence. The trial court imposed a mid-range sentence of 175 months and the 60-month firearm sentencing enhancement. George appeals.

ANALYSIS

First, George appeals his conviction for second degree murder arguing that he was denied a fair trial based on repeated instances of prosecutorial misconduct and improperly admitted prejudicial evidence. Second, George argues that the trial court violated double jeopardy by entering judgment on both counts of second degree murder. Third, George argues that he is entitled to a new sentencing hearing so that he can ask the trial court for an exceptional sentence downward based on his youth at the time of the shooting.[3]

We affirm George's conviction because George has failed to establish any prejudicial error that deprived him of a fair trial. And George waived his challenge to his sentence by failing to request an exceptional sentence downward at his sentencing hearing. However, the trial court violated double jeopardy by referencing the verdict for count II in the judgment and sentence. Accordingly, we affirm George's conviction and sentence, but remand to the trial court to strike the reference to the jury's verdict on count II in the judgment and sentence.

## I. FAIR TRIAL

George claims that

the scope, magnitude and complete pervasiveness of all of the misconduct and prejudicial evidence was so corrosive and complete that it ensured that no jurors could possibly have fairly determined the only real issue in the case - whether the prosecution met its burden of proving, beyond a reasonable doubt, that George did not act with self-defense.

---

[3] George also argues that the trial court improperly instructed the jury as to the standard for self-defense as it relates to count II—felony murder. But George does not contend that the trial court improperly instructed the jury on the standard for self-defense on count I—intentional murder. Because we hold that George's conviction on count II must be dismissed, we do not address George's claim that the jury instructions for count II were erroneous.

Br. of Appellant at 24-25. Essentially, George argues that the cumulative error doctrine requires a reversal of his conviction. However, he does so without individually analyzing the merit of each individual alleged error. Contrary to George's assertion that, "[t]he facts regarding these issues are woven throughout trial and do not summarize neatly into categories, so the entire trial and all those errors must be reviewed at once," the alleged errors in this case are readily ascertainable and can be analyzed individually. Br. of Appellant at 10.

The errors here are either evidentiary irregularities or alleged instances of prosecutorial misconduct. Before turning to George's allegation of cumulative error, we address the merits of each alleged error individually to determine whether an error or misconduct occurred and the extent of the prejudice caused by the error or misconduct. Such an inquiry is necessary to determine whether the cumulative error doctrine applies and whether the cumulative errors in this case, if any, require reversal.

## II. TRIAL IRREGULARITIES

During trial, George made several motions for a mistrial based on trial irregularities that occurred during testimony. Specifically, George argues that three specific trial irregularities support his cumulative error argument: (1) Johnson's testimony that George looked like a "monster" when he shot Clarke; (2) Johnson's testimony that someone at the gas station stated George and McGrew were the "same guys who shot my home boys"; and (3) Michael's testimony Millender told him Clark was shot "like their other friend who had been shot before." Johnson's testimony that George looked like a monster was not an error; however, the other two comments were errors and will be considered when evaluating his cumulative error argument.

A. "MONSTER" DESCRIPTION

George argues that Johnson's description of George as a "monster" was an evidentiary error. George objected to the comment and asked that it be stricken from the record, but the trial court overruled the objection. George argues that the comment was prejudicial within the context of the entire trial. Because George has not established that the trial court improperly overruled his objection to the "monster" comment, he has failed to demonstrate an error that supports his cumulative error argument.

B. "SAME GUYS WHO SHOT MY HOME BOYS"

George also argues that Johnson's testimony that someone stated, "This is the same guys who shot my home boys a certain time ago, a week ago," supports his argument that there was cumulative error. VRP (Aug. 19, 2014) at 94. Here, there is no dispute that the trial court properly determined that the comment was improper. Although the individual prejudice caused by this error was cured by an instruction to the jury; because the statement was improper we will consider it when evaluating George's cumulative error argument.

C. "Shot Him Like Their Other Friend Who Had Been Shot Before"

George also argues that Michael's testimony that Millender told him Clark was shot "like their other friend who had been shot before," was improper and prejudicial. VRP (Aug. 19, 2014) at 163. The statement was improper because the State objected to Michael's testimony and the trial court sustained the objection. Because the statement was improper, we will consider it when evaluating George's cumulative error argument.

## III. PROSECUTORIAL MISCONDUCT

George also relies on seven alleged incidents of prosecutorial misconduct to support his cumulative error argument. A defendant alleging prosecutorial misconduct must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We will reverse for prosecutorial misconduct when there is a substantial likelihood that the misconduct affected the jury's verdict. *Emery*, 174 Wn.2d at 760. If a defendant fails to object to improper comments at trial, fails to request a curative instruction, or fails to move for a mistrial, we will not reverse unless the misconduct was so flagrant and ill-intentioned that no curative instruction could have obviated the prejudice engendered by the misconduct. *Emery*, 174 Wn.2d at 760-61. Before determining whether any of the alleged incidents of prosecutorial misconduct support George's cumulative error argument, we must determine which, if any, alleged incidents were actually improper.

### A. REFERENCE TO PRIOR TRIAL

George alleges that the prosecutor engaged in misconduct by referring to the prior trial as a trial during George's testimony rather than a prior hearing. We agree. The trial court expressly instructed the attorneys to refer to the prior trial as a prior hearing. And the trial court reminded the prosecutor of this ruling during George's cross-examination. Despite this, the prosecutor referred to the prior trial as a trial two more times, directly violating the trial court's order. Although the trial court found that the prosecutor did not act deliberately, the prosecutor's reference to the prior trial as a trial, in direct violation of the trial court's order, was improper. Accordingly, the prosecutor's reference to the prior trial as a trial is an error that we will consider when evaluating George's cumulative error argument.

B.  CLOSING ARGUMENT REGARDING CONFLICTS WITH 2009 TESTIMONY

George also argues that the prosecutor committed misconduct during closing argument by misstating the facts regarding George's 2009 testimony.  During closing argument, prosecutors have wide latitude to argue all reasonable inferences from the evidence.  *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011).  Here, the prosecutor's arguments were based on the properly admitted statements that George made in 2009.  The prosecutor did not misstate the evidence presented at trial, therefore, the argument was not improper.  Accordingly, the prosecutor's argument regarding the differences between George's current testimony and his 2009 testimony is not an error that supports George's cumulative error argument.

C.  STATEMENT/SLIDE THAT GEORGE DID NOT ARGUE SELF-DEFENSE IN 2009

Similarly, George argues that the prosecutor improperly stated that George did not argue self-defense in 2009 by using a slide which stated "2009 ≠ self-defense."  Br. of Appellant at 20. However, the prosecutor was not stating that George never raised self-defense in 2009.  Instead, the prosecutor was arguing that George's testimony in 2009 was insufficient to establish a claim of self-defense.  This was a reasonable argument based on the evidence that was admitted at trial and was not improper.  Accordingly, the prosecutor's slide and corresponding statement, that George's testimony in 2009 did not equal self-defense, is not an error that supports George's cumulative error argument.

D. STATEMENT THAT "WE DON'T CARE WHAT THE DEFENDANT SAYS"

George argues that the prosecutor misstated the law regarding self-defense when he argued that "we don't care what the defendant says." Br. of Appellant at 26. Because self-defense has both an objective and subjective element, the prosecutor did not misstate the law in his closing argument. Self-defense has both subjective and objective components. *George*, 161 Wn. App. at 96. The subjective component requires viewing the facts from the defendant's point of view. *George*, 161 Wn. App. at 96. The objective component requires determining what a reasonably prudent person would have done in the circumstances. *George*, 161 Wn. App. at 96. Because both components must be satisfied, the subjective component is immaterial if the objective component is not satisfied. *See George*, 161 Wn. App. at 96.

Here, the prosecutor was arguing that, because a reasonable person would not have used deadly force in this situation, the jury did not need to consider whether George subjectively believed deadly force was appropriate. In other words, the prosecutor was arguing that because George failed to prove one component of self-defense, the jury did not need to consider the other component. This argument was reasonable within the context of the evidence presented at trial and was not improper. Accordingly, there was no error that supports George's cumulative error argument.

E. ARGUMENT THAT CLARK MUST HAVE HAD A GUN TO ESTABLISH SELF-DEFENSE

George also argues that the prosecutor misstated the law in rebuttal argument by arguing to the jury that George could not establish a self-defense claim unless Clark had a gun at the time of the shooting. Although George is correct in stating that the law does not require George to prove that Clark had a gun in order to establish a self-defense claim, the prosecutor was not arguing

that the law required George to prove Clark had a gun. Rather the prosecutor was arguing that, based on the specific facts of the case, the facts would not support a self-defense claim unless Clarke had a gun. This argument is based on reasonable inferences drawn from the evidence presented at trial, therefore, it was not improper. The prosecutor's rebuttal argument that George could not establish a self-defense claim without proving Clark had a gun was not an error and this portion of the prosecutor's rebuttal argument does not support George's cumulative error argument.

F. ARGUMENT THAT GEORGE WAS USED TO GETTING SHOT AT

George argues that the prosecutor improperly presented ER 404(b) propensity evidence to the jury during rebuttal argument. Specifically, George argues that the prosecutor told the jury that George had been in several dangerous situations with McGrew and was used to being shot at. It is improper for a prosecutor to urge to jury to decide a case based on evidence outside the record. *State v. Pierce*, 169 Wn. App. 533, 553, 280 P.3d 1158 (2012), *remanded*, 2016 WL 7104032 (2016). However, this was not new propensity evidence that the prosecutor was trying to present during closing argument. Instead, it was argument based on evidence that was properly admitted during trial. Accordingly, the prosecutor's argument was not improper and this portion of the prosecutor's rebuttal argument does not support George's cumulative error argument.

G. USE OF "MONSTER" COMMENT IN CLOSING

Finally, George argues that the prosecutor committed misconduct by referring to Johnson's "monster" comment in closing argument, and by highlighting the comment on a slide during the argument. But this evidence was admitted at trial. And as explained above, George has provided no basis for establishing that the "monster" comment was improperly admitted evidence. The

prosecutor referred to a specific piece of evidence in closing argument which is not improper. George has provided no alternative explanation for why the prosecutor's argument based on evidence admitted at trial would be improper. Accordingly, the prosecutor's references to Johnson's "monster" comment were not improper and this is not an error that can support George's cumulative error argument.

## IV. CUMULATIVE ERROR

George alleges that the combined effect of the alleged prosecutor misconduct and improper evidence deprived him of a fair trial under the cumulative error doctrine. "The cumulative error doctrine applies where a combination of trial errors denies the accused of a fair trial, even where any one of the errors, taken individually, would be harmless." *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014), *cert. denied*, 135 S. Ct. 1702 (2015). To support a cumulative error claim, the appellant must demonstrate multiple errors. *Cross*, 180 Wn.2d at 690-91.

After reviewing all of George's alleged evidentiary errors and instances of prosecutorial misconduct, we have determined that he has only identified three errors that will be considered in his cumulative error argument: (1) Johnson's spontaneous and nonresponsive statement that someone stated Clark was shot by the "same guys who shot my home boys;" (2) Michael's spontaneous and nonresponsive statement that "they shot him like their other friend who was shot before;" and (3) the prosecutor's reference to the prior trial. Even considered together, these three errors did not deprive George of his right to a fair trial.

The prejudice caused by the two spontaneous, nonresponsive witness statements resulted in the implication that George had been involved with other shootings. However, in addition to being instructed to disregard the improper statements, the jury was specifically instructed that there was no evidence that George had participated in shootings prior to shooting Clark. While multiple evidentiary errors may cause cumulative error because collectively the prejudice is too great for the jury to disregard, here, the specific prejudice caused by the errors was cured by an explicit jury instruction. Accordingly, the two comments, even when taken together, did not cause an enduring prejudice that denied George a fair trial.

In contrast to the evidentiary errors, the prosecutor's improper reference to the prior trial allegedly prejudiced George's trial strategy and preparation rather than directly prejudicing the jury. However, George has not explained, either at trial or on appeal, what specific prejudice was caused by the prosecutor's reference to the prior trial. Therefore, even though the prosecutor's direct violation of a court order was improper, it did not cause prejudice that requires reversal.

Based on the three alleged instances that we have determined were errors, George was not denied a fair trial. Accordingly, his cumulative error argument fails and we affirm his second degree murder conviction for count I—intentional murder.

## V. DOUBLE JEOPARDY

George argues that the trial court violated double jeopardy by entering judgment on both count I—intentional murder and count II—felony murder. We review double jeopardy claims de novo. *State v. Hughes*, 166 Wn.2d 675, 681, 212 P.3d 558 (2009). Double jeopardy protects a defendant from receiving multiple punishments for the same offense. U.S. CONST. amend. V; *State v. Trujillo*, 112 Wn. App. 390, 409, 49 P.3d 935 (2002). "Therefore, where the jury returns

19

a verdict of guilty on each alternative charge, the court should enter a judgment on the greater offense only and sentence the defendant on that charge without reference to the verdict on the lesser offense." *Trujillo*, 112 Wn. App. at 411.

Further, a trial court may violate double jeopardy by "conditionally vacating the lesser conviction while directing, in some form or another, that the conviction nonetheless remains valid." *State v. Turner*, 169 Wn.2d 448, 464, 238 P.3d 461 (2010). In *Turner*, our Supreme Court specifically directed:

> To assure that double jeopardy proscriptions are carefully observed, a judgment and sentence must not include any reference to the vacated conviction-nor may an order appended thereto include such a reference; similarly, no reference should be made to the vacated conviction at sentencing.

169 Wn.2d at 464-65.

Here, the trial court violated the directive in *Turner* by referring to the guilty verdict on count II in George's judgment and sentence. Accordingly, we remand to the trial court to strike the language in George's judgment and sentence which refers to the jury's guilty verdict on count II.[4]

---

[4] George also notes that the State mentioned both jury verdicts in its sentencing recommendations. In *Turner*, in addition to ordering the trial court to enter a corrected judgment and sentence, our Supreme Court ordered the trial court to "redact all references to any validity or import attributable to the vacated lesser conviction." 169 Wn.2d at 466. Because we remand to the trial court to remove the references to the jury's verdict on count II, we do not address this argument further.

## VI. SENTENCING

Finally, George argues that, if we decline to reverse his conviction, we should remand to the trial court for resentencing to allow George to seek an exceptional sentence downward based on his youth at the time of the shooting. George relies on *State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015), to argue that George is now entitled to use his youth at the time of the shooting to request an exceptional sentence downward. In *O'Dell*, our Supreme Court held that the trial court erred by refusing to consider an exceptional sentence downward based on its belief that it was prohibited from considering whether youth diminished the defendant's capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law. 183 Wn.2d at 696. Although George argues that his youth should be a factor to consider in evaluating his culpability, he has waived his challenge to his standard range sentence by failing to request an exceptional sentence downward at the time of sentencing. Therefore, we affirm George's standard range sentence.

Generally, a sentence within the standard sentence range for an offense may not be appealed. RCW 9.94A.585. Our courts have recognized an exception to this general rule in cases in which a defendant has requested an exceptional sentence, but the trial court imposed a standard range sentence based on its belief that it did not have the authority to grant an exceptional sentence. *See O'Dell*, 183 Wn.2d at 697. However, unlike the counsel in *O'Dell*, George did not ask the trial court to impose an exceptional sentence downward at sentencing. Therefore, George has failed to demonstrate that his standard range sentence is appealable.

We affirm George's conviction and sentence for second degree murder but remand to the trial court to strike the language in George's judgment and sentence which refers to the jury's guilty verdict on count II, the felony murder charge.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, C.J.

MAXA, J.